Day, J.
 

 This is an original action in mandamus in which the plaintiff asks that the defendant, the Industrial Commission of Ohio, accept premiums from it, payable into the state insurance fund under the Workmen’s Compensation Act for the benefit of its employes, who are employed “on floating vessels in navigable waters.” These men are divisible into eight classes:
 

 (1) Men on floating dredges. Employed in dredging for foundations for docks, cribs, and bridges, dredging trenches for installing pipes of brick, concrete, or metal, for water, sewer, or gas, for making, widening, and deepening channels, making fills behind docks, breakwaters, jetties, and similar work.
 

 ('2) Pile driver men. While employed on a floating pile driver, in the work of driving piles for foundations, breakwaters, jetties, docks, dry docks, cribs, wharves, water intake cribs, and similar structures.
 

 (3) Men on barges and scows. Employed in hauling stone, piles, and other materials, hauling fuel for dredges, pile drivers, and derricks, in diving and blasting operations, in hauling away and dumping dredged material in the work above set forth.
 

 (4) Men on floating derricks. While employed in lightering, loading, or carrying materials to
 
 *98
 
 and from dredges, pile drivers, scows, engaged in the work above set forth.
 

 (5) Men engaged in preparatory work. While on dredges, pile drivers, barges, derrick scows, lighter scows, and dump scows, in the preparation or disposition of materials, building or shaping of oribs, caissons; sections of pipe, or piling, or concrete blocks for use on work of the character hereinbefore enumerated.
 

 (6) Eepair men. Employed while afloat, in the raising, repairing, or caulking of dredges, pile drivers, barges, derrick scows, and dump scows and similar craft.
 

 (7) Tug men. While the tug is engaged in towing or standing by dredges, floating pile drivers, floating derricks, barges, and scows employed in any of the kinds of work above enumerated.
 

 (8) Stevedores. Men employed on dredges, floating pile drivers, barges, deck scows, dump scows, and floating derricks in loading or unloading materials, while such craft is engaged in the work above enumerated.
 

 The petition recites:
 

 “Its employes in the above classifications desire to accept compensation under the Workmen’s Compensation Law of Ohio, in lieu of and in preference to their rights under the maritime law in all oases of injury or loss of life while engaged in said employments.”
 

 The petitioner avers that it comes within the scope of the Workmen’s Compensation Act, having employed more than three workmen regularly in its business in the state of Ohio; that prior to the 16th day of September, it fully complied with the
 
 *99
 
 "Workmen’s Compensation Law of Ohio and the rules of tlie Industrial Commission of Ohio, and paid to «aid Commission premiums covering its employes under the classifications above enumerated, but that on the 16th day of 'September, 1924, the defendants, as the Industrial Commission of Ohio, refused to accept any further premiums, and have at 'all times since refused and now refuse to receive any further premiums on any of the general classifications of work herein referred to, upon the sole ground that the employments of the several classifications while engaged on “floating vessels in navigable waters” are maritime employments, and do not come within the provisions of the Ohio Workmen’s Compensation Law, and are therefore not within the jurisdiction of the said Industrial Commission of Ohio. The petitioner therefore asks that a writ of mandamus issue commanding the defendants to receive the premiums in accordance with the Workmen’s Compensation Law of Ohio to cover the employes of petitioner engaged in the above-mentioned classifications, and to exercise jurisdiction over claims arising out of said employments.
 

 To this petition the defendant has filed a general demurrer, upon the -ground that the petition does not state facts sufficient to constitute a cause of action against defendant.
 

 The question then is, as stated by plaintiff, not whether the employments enumerated in the petition are within the wording of the Workmen’s Compensation Law of the state of Ohio, but is rather whether the limitations placed upon the broad language of the act by the provisions of
 
 *100
 
 the federal Constitution and the judiciary acts passed in pursuance of the constitutional provision exclude such employments from the provisions of the Ohio Compensation Law.
 

 The Constitution of the United States, Section 2, Article III, contains the following provision:
 

 “The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority; to all cases, affecting ambassadors, other public ministers, and consuls; to all eases of admiralty and maritime jurisdiction * * *.”
 

 Now it will be conceded that there is no express provision in the Ohio Compensation Act with reference to employes engaged in maritime employment.
 

 Section 1465-60, General Code, as amended 110 Ohio Laws, 224, is broad in its scope, and does not exempt any one from its application. It applies to all employers of the state who employ three or more workmen or operators, and the act defines the term “employe” as being one in the service of any person or firm or private corporation, including any public service corporation, employing three or more workmen regularly in the same business.
 

 The federal Judiciary Act provides that the district court shall have exclusive jurisdiction, among other things “of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it.” Judicial Code, Sections 24 and 25'6, as amended
 
 *101
 
 42 Stats, at L., 634 and '635; Sections 991(3) and 1233, U. S. Comp. Stats. (1923 Snpp.); Sections 563 and 711, U. S. Bev. St.; Sections 785(3) and 1021(3), Barnes’ Fed. Code.
 

 The question raised by this demurrer then is, What is the extent of the application of the State Compensation Act to injuries received by one working upon a boat afloat in navigable waters? Is the same within admiralty jurisdiction?
 

 It appears by the petition that the parties have contracted with reference to the state statute, and asked that the employment be so considered, and that both parties desire to seek relief under the Workmen’s Compensation Act.
 

 Under these contracts of employment do the rights and liabilities have a direct relation to navigation? And would the application of the local law (Compensation Act) materially affect any of the rules of the sea and thereby the uniformity which is essential to maritime law?
 

 If the answer to the question simply involved whether or not the injuries were received while the employe was working afloat on navigable waters, the solution would be easy, but, in the light of -the definition of the word “maritime,” as defined by the courts, it must be something more than simply an injury taking place on navigable waters.
 

 “It is not easy to get an exact definition of the term ‘maritime contract.’ It is far easier to say what is not a maritime contract. ‘The true criterion,’ says Mr. Justice Bradley, ‘is the nature and subject-matter of the contract, as where it has reference to maritime services or maritime transao
 
 *102
 
 tions. ’
 
 New England Marine Ins. Co.
 
 v.
 
 Dunham,
 
 78 U. S., (11 Wall.) 1, 20 L. Ed., 90. Browne, in his work on Civil and Admiralty Law (volume 2, p. 82),
 
 asks
 
 the question, ‘What contracts should be cognizable in admiralty?’ and answers it, ‘All contracts which relate purely to maritime affairs.’ Maritime contracts áre such as relate to commerce and navigation.
 
 The Orpheus
 
 (U. S.), 30 Fed. Cas., 859. To be a maritime contract it is not enough that the subject-matter of it, the consideration or the service, is to be done on the sea. The contract must be in its nature maritime. It must relate to maritime affairs, and have a connection with the navigation of the ship, with her equipment or preservation, or with maintenance or preservation of the crew who are necessary to the navigation and safety of the ship.
 

 “A maritime contract must concern transportation by sea; it must relate to navigation and to maritime employment; it must be one of navigation and commerce on navigable waters. So it is held that a contract under which coal is furnished to a steam dredge engaged in sucking up material from the bottom of a lake and discharging it through pipes upon the distant shore, not for the purpose of improving navigation, but merely to make a fill to be used for railroad purposes, is not a maritime contract under which a maritime lien may arise.
 
 In re Hydraulic Steam Dredge No. 1,
 
 80 Fed., 545, 556, 25 C. C. A., 628.
 

 “Not every contract having reference to a ship is within the admiralty jurisdiction, but only such as relate to maritime employment, such as pertain to the navigation of a ship or assist the
 
 *103
 
 vessel in the discharge of a maritime obligation. It is not enough that the service is to be done upon the sea or with respect to the ship.”
 
 Bowers Hydraulic Dredging Co.
 
 v.
 
 Federal Contracting Co.
 
 (D. C.), 148 F., 290. See also Corpus Juris, vol. 1, p. 1266.
 

 With these definitions in mind, what ip the character of work for which the plaintiff herein contracts with its employes? It is for dredging for foundations for docks, cribs, and bridges, dredging trenches for- installing pipes of brick, concrete, or metal, for water, sewer, or gas; for making, widening, and deepening channels; making fills behind docks, breakwaters, jetties, and similar work; employed on floating pile driver, in the work of driving piles for foundations, breakwaters, jetties, docks, dry docks, cribs, wharves, water intake cribs; hauling stone, piles, and other materials; hauling fuel for dredges, pile drivers, and derricks; in diving and blasting operations; in hauling away and dumping dredged material in the work above set forth; lightering, loading, or carrying materials to and from dredges, pile drivers, scows, engaged in the work above set forth; in preparatory work on dredges, pile drivers, barges, derrick scows, lighter scows, and dump scows; in the preparation or disposition of materials, building or shaping of cribs, caissons, sections of pipe, or piling, or concrete blocks for use on work of the character hereinbefore enumerated; repair men while afloat in the raising, repairing, or caulking of dredges, pile drivers, barges, derrick scows, and dump scows and similar craft; tug men while tug is engaged in towing or standing
 
 *104
 
 by dredges, floating pile drivers, floating derricks, barges, and scows employed in any of the kinds of work above enumerated; stevedores while employed on dredges, floating pile drivers, barges, deck scows, dump scows, and floating derricks in loading or unloading materials, while such craft is engaged in the work above enumerated.
 

 A "careful examination of the range of work which the employes of the plaintiff performed would seem to disclose nothing that had a direct bearing upon the maritime service, navigation, or maritime commerce, either interstate or foreign. In a remote degree some of the work performed by the plaintiff may be the service in navigation and in commerce by vessels engaged in such service following a channel dredged by the plaintiff or tying up to a wharf which may have been built by plaintiff, or taking refuge behind a breakwater, or piles driven by plaintiff’s employes, but it is difficult to see how the laying of gas or water pipes under the bed of a river or building a crib for water supply for a city affects maritime law or navigation.
 

 It would therefore seem that the principles announced in
 
 Grant Smith-Porter Ship Co.
 
 v.
 
 Rohde,
 
 257 U. S., 469, 42 S. Ot., 157, 6'6 L. Ed., 321, 25 A. L. R., 1008, would apply rather than the rule of
 
 Southern Pacific Co.
 
 v.
 
 Jensen,
 
 244 U. S, 205, 37 S.
 
 Ct.,
 
 524, 61 L. Ed., 1086, L. R. A., 1918C, 451, Ann. Cas., 1917E, 900, a case in which maritime law was directly involved and an application of the Workmen’s Compensation of New York was denied. The court says:
 

 ‘ ‘ The work of a stevedore in which the deceased
 
 *105
 
 was engaging- is maritime in its nature; Ms employment was a maritime contract; the injuries wMch he received were likewise maritime; and the rights and liaMlities. of the parties in connection therewith were matters clearly within the admiralty jurisdiction.”
 

 After the decision in the
 
 Jensen case,
 
 Congress by amendment of the federal Judiciary Act undertook to permit application of workmen’s compensation acts of the several states to injuries within admiralty jurisdiction. This provision was declared beyond the power of Congress in
 
 Knickerbocker Ice Co.
 
 v.
 
 Stewart,
 
 253 U. S., 149, 163, 40 S. Ct., 438, 64 L. Ed., 834, 11 A. L. R., 1145.
 

 In
 
 Grant Smith-Porter Ship Co.
 
 v.
 
 Rohde, supra,
 
 there was a proceeding in admiralty to recover damages from a ship builder for injuries which a carpenter received while working on an unfinished vessel moored in Willamette river at Portland, Ore. The Workmen’s Compensation Act of Oregon was permitted to apply. The court said:
 

 “And, as both parties had accepted and proceeded under the statute by making payments to the Industrial Accident Fund, it cannot properly be said that they consciously contracted with each other in contemplation of the general system of maritime law * * *. Under such circumstances regulation of the rights, obligations, and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its
 
 *106
 
 international or interstate relations. * * * Here the parties contracted with, reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local laAv cannot materially affect any rules of the sea whose uniformity is essential.”
 

 A large number of cases may be cited which adopt the principle announced in
 
 Southern Pacific Co.
 
 v.
 
 Jensen, supra,
 
 but all that class of cases is founded upon some conflict of the law of the sea or maritime law with the local statute. These cases often relate to stevedores or longshoremen unloading the cargo of vessels, or to artisans working upon a A^essel engaged in interstate or foreign trade; in fact, all of them have some direct bearing upon maritime law. On the other hand, the courts distinctly recognize a group of cases, of which
 
 Grant Smith-Porter Ship Co.
 
 v.
 
 Rohde, supra,
 
 is the leading case, all founded upon the principle that their provisions were found not to be in conflict with any essential feature of the general maritime law.
 
 Industrial Commission of N. Y.
 
 v.
 
 Nordenholt Corp.,
 
 259 U. S., 263, 42 S. Ct., 473, 66 L. Ed., 933, 25 A. L. R., 1013, is of this class; also
 
 Western Fuel Co.
 
 v.
 
 Garcia, Adm’r.,
 
 257 U. S., 233, 42 S. Ct., 89, 66 L. Ed., 210. The difference is distinctly noted in
 
 Washington
 
 v.
 
 W. C. Dawson & Co.
 
 and
 
 Industrial Accident Comm. of Cal.
 
 v.
 
 James Rolph Co.,
 
 264 U. S., 219, 44 S. Ct., 302, 68 L. Ed., 646; also in
 
 Robins Dry Dock & Repair Co.
 
 v.
 
 Dahl,
 
 266 U. S., 449, 45 S. Ct., 157, 69 L. Ed., —, decided January 5, 1925. In these last three cases the rights and liabilities of the parties arose out of and depended upon general maritime
 
 *107
 
 law, and could not be enlarged or impaired by-statute. To the same effect is the holding in
 
 Alaska Steamship Co.
 
 v.
 
 McHugh,
 
 where the Supreme Court determined that the so-called First Employers’ Liability (federal) Act (IT. S. Comp. St. Sections 8657, 8665) did not apply to purely maritime torts, decided April 13, 1925, 268 U. S., 23, 45 Sup. Ct., 396, 69 L. Ed., —.
 

 Among the state courts recognizing the doctrine here held may be cited
 
 Berry
 
 v.
 
 Donovan & Sons,
 
 120 Me., 457, 115 A., 250, 25 A. L. R., 1021; also
 
 Wooley
 
 v.
 
 E. M. Wichert Co.,
 
 275 Pa., 167, 118 A., 765. In this case the plaintiff’s husband was employed as a foreman on a derrick boat, which was anchored ini a harbor on a navigable river, and was used for excavating purposes, and it was held that the employment was nonmaritime. In
 
 Millers’ Indemnity Underwriters
 
 v.
 
 Boudreaux
 
 (Tex. Civ. App.), 245 S. W., 1025, the cause of action arose out of the death of a diver in a navigable stream working off a floating barge. It was held that it was not shown by the evidence to be maritime in nature as regarded the right to compensation under the Workmen’s Compensation Act. This case distinctly recognized the
 
 Grant Smith-Porter Ship Company case, supra,
 
 and the
 
 Nordenholt Corp. case, supra,
 
 and said that had those oases been before the court when
 
 Home Life & Accident Co.
 
 v.
 
 Wade
 
 (Tex. Civ. App.), 236 S. W., 778, was decided the conclusion would have been different, and the rule announced in the
 
 Grant Smith-Porter Ship Co.
 
 and
 
 Nordenholt
 
 Corp.
 
 cases
 
 adopted. To the same effeet are the cases of
 
 Employers’ Liability Assurance Corp., Ltd.,
 
 v.
 
 Indus
 
 
 *108
 

 trial Accident Comm.,
 
 177 Cal., 771, 171 P., 935;
 
 Los Angeles Shipbuilding & Drydock Co.
 
 v.
 
 Industrial Accident Comm.,
 
 57 Cal. App., 352, 207 P., 416;
 
 Gillard’s case,
 
 244 Mass., 47, 138 N. E., 384;
 
 Bockhop v. Phoenix Transit Co.,
 
 97 N. J. Law, 514, 117 A., 624;
 
 Wooley
 
 v.
 
 E. M. Wichert Co.,
 
 275 Pa., 167, 118 A., 765;
 
 Lumbermen’s Reciprocal Ass’n.
 
 v.
 
 Adcock
 
 (Tex. Civ. App.), 244 S. W., 645;
 
 Riedel
 
 v.
 
 Mallory Steamship
 
 Co., 196 App. Div., 794, 188 N. Y. S., 649;
 
 Lawton
 
 v.
 
 Diamond Coal & Coke Co.,
 
 272 Pa., 74, 115 A., 886;
 
 Travelers’ Ins. Co.
 
 v.
 
 Bacon,
 
 30 Ga. App., 728, 119 S. E., 458;
 
 Zahler
 
 v.
 
 Department of Labor and Industries,
 
 125 Wash., 410, 217 P., 55.
 

 Other states have reached conclusions denying the application of the workmen’s compensation statutes following the rule of the
 
 Jensen case,
 
 but an examination of those cases will disclose that the contract of employment and services rendered were maritime in character. A good case illustrating this viewpoint and citing many authorities is
 
 O’Hara’s case
 
 and
 
 Brandeis’s case,
 
 decided by the Supreme Judicial Court of Massachusetts, 248 Mass., 31, 142 N. E., 844. This is a well-considered case, and distinguished
 
 Gillard’s case,
 
 244 Mass., 47, 138 N. E., 384. Other cases recognizing the maritime principle of the
 
 Jensen case
 
 are
 
 Doey
 
 v.
 
 Howland,
 
 224 N. Y., 30, 120 N. E., 53, followed in
 
 Anderson
 
 v.
 
 Johnson Lighterage Co.,
 
 224 N. Y., 539, 120 N. E., 55;
 
 Newham
 
 v.
 
 Chile Exploration Co.,
 
 232 N. Y., 37, 133 N. E., 120, 25 A. L. R., 1018;
 
 Thornton
 
 v.
 
 Grand Trunk Milwaukee Car Ferry Co.,
 
 202 Mich., 609, 168 N. W., 410;
 
 Neff
 
 v.
 
 Industrial Comm.,
 
 166 Wis., 126, 164 N. W., 845.
 

 
 *109
 
 Many other cases could be cited illustrating this viewpoint, but, as noted above, all of them rest upon the maritime character of the work in which, the injured was engaged and direct relation to navigation).
 

 The application of this character of cases must be denied in the present instance, for the reason it does not appear by the allegations of the petition that a single one of plaintiff’s employes will ever come in contact with a vessel engaged in commerce, foreign or domestic, intrastate or interstate, or with navigation in its generally accepted, meaning. >. j
 

 It is of course difficult to lay down a, hard and fast rule which is to apply in all cases where the employment is close to the line as to being maritime or otherwise, and it is possible that plaintiff may some time have a case involving maritime service, but from the language and allegations of the petition we are disposed to classify the service therein averred as nonmaritime in character, even though rendered “on floating vessels in navigable waters.”
 

 The principles applicable to this case are thoroughly discussed in
 
 Knickerbocker Ice Co.
 
 v.
 
 Stewart,
 
 253 U. S., 149, 40 S. Ct., 438, 64 L. Ed., 834, 11 A. L. R., 1145, 25 A. L. R., 1029, 31 A. L. R., 518.
 

 From an examination of the many authorities we believe the rule to be that, unless some interference with maritime law and navigation or maritime trade is shown, recovery under state compensation laws will be allowed where the parties have contracted with reference thereto and desire to regulate their rights thereby.
 

 
 *110
 
 We therefore reach the conclusion that under the averments of this petition the character of the work stated would seem to show no invasion of maritime law. In view of the fact that the parties have contracted with reference to the state law and desire to come within the State Compensation Act, the nature of their employment showing no invasion of maritime law, we do not feel justified in denying the relief the petition seeks.
 

 Entertaining these views, the demurrer is overruled.
 

 Demurrer overruled.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.