JESSE V. EMMONS v. PACIFIC INDEMNITY COMPANY.

No. A-1363. Decided February 4, 1948.
Rehearing overruled March 24, 1948.
'208 S. W., 2d Series, 884.)

*Joe H. Tonahill* and *Joe J. Fisher,* of Jasper, and *Looney & Clark* and *R. Dean Moorhead,* all of Austin, for petitioner.

*Strong, Moore & Nelson,* and *Louis Nelson,* all of Beaumont, for respondent.

MR. JUSTICE SHARP delivered the opinion of the Court.

Petitioner filed this suit in the district court, to set aside an award of the Industrial Accident Board, alleging that he had sustained injuries on or about March 27, 1946, while in the course of his employment with the Levingston Shipbuilding Company, at Orange, Texas, and that he was entitled to recover benefits under the Workmen's Compensation Act of Texas. Respondent filed its plea in abatement under oath, contending that the trial court had no jurisdiction, because petitioner's injury was of a maritime nature, exclusively within the jurisdiction of admiralty, and that the Texas Workmen's Compensation Act was not applicable. On February 13, 1947, the trial court sustained respondent's plea in abatement and dismissed the suit. On appeal the court of civil appeals affirmed the order of the trial court. 203 S. W. (2d) 342.

Petitioner contends that at the time he was injured he was performing a nonmaritime service, and that he is entitled to recover benefits under the Workmen's Compensation Act of Texas. Respondent, on the other hand, contends that petitioner was injured while engaged in a maritime service, exclusively within the jurisdiction of admiralty. The trial court and the court of civil appeals sustained respondent's contention.

The evidence shows that petitioner was employed as a chipper by the Levingston Shipbuilding Company; that a chipper is one who goes ahead of a welder in the construction or repair of a ship and cuts and beats out steel to be put on a vessel; that shipbuilding was the principal purpose for which the shipbuilding company hired its employees, and petitioner was principally hired for that purpose; that the shipbuilding company used the same employees for repair work and for conversion that it did for new construction; that petitioner worked on jobs in accordance with the instructions from his foreman; that at the time of his injury he was chipping on a deckhouse of an old barge, which had been designated by the shipbuilding company as "Hull No. 236," and while thus engaged he fell from a scaffold to the bottom of the barge; that he was engaged in helping build a deckhouse in reconverting the barge into a fuel barge; that this barge or hull, along with other hulls, was anchored in the Sabine River, which river is admittedly a navigable stream; that the only use of the hull at the time of the alleged accident was that it and other hulls

formed a series, the first of which was tied to the pier, and were used as "floating docks," and there is no showing that the hulls as so used were ever moved from place to place; that planks had been laid across the tops of the hulls, which enable workmen to walk across same to vessels anchored in the deeper parts of the Sabine River; that Hull No. 236 could be towed in navigation and was capable to carrying cargo, but it was not shown that it had been used in navigation prior to the time of the alleged accident, nor was it shown that it had ever been commissioned or licensed for such use; that it had been launched in 1943, and it was not until after petitioner's injury that it was subsequently leased to an oil company and placed in use for the transporation of oil.

It is alleged in petitioner's petition that his employer was a subscriber under the Workmen's Compensation Act; and it is shown by the evidence that this was true, and that respondent was the insurance carrier of such employer. It is also shown that proceedings with respect to petitioner's injury had been taken under the Workmen's Compensation Act, rather than under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A., sec. 901 et seq., and that the employer is not shown to have taken any action under the Longshoremen's Act nor to have controverted payment in the manner prescribed in such act.

Frequently the line of demarcation as to whether an employee is engaged in a maritime or a nonmaritime service is not well defined. Congress and the various legislatures of the states have passed laws to protect employees who are engaged in these services. The acts of Congress and the acts of the various legislatures supplement one another, and it has been the purpose of Congress and the legislatures to leave no employee unprotected in what is called the twilight zone. In the construction of the various laws enacted, the decisions of the courts are not uniform. That the trend of decisions on this question has undergone a change is quite obvious.

In 1917 the Supreme Court of the United States, in Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, declared invalid a New York statute allowing compensation to employees working on a vessel engaged in interstate commerce, and held that any benefit arising from an injury sustained in such employment was controlled by the rule established by Congress. This left a perplexing problem to solve. Soon after the Jensen

case, Congress, in order to help solve the problem, enacted 40 Stat. 395. This act was declared unconstitutional by a divided court. See Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145. In 1922 Congress enacted 42 Stat. 634, 28 U. S. C. A., secs. 41(3), 371(3), to permit compensation laws to protect these water front employees, but this act was also held invalid. See State of Washington v. W. C. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646. In 1927 Congress enacted the Federal Longshoremen's and Harbor Workers' Act, 33 U. S. C. sec. 901 et seq., 33. U. S. C. A. sec. 901 et seq. Congress clearly stated its purpose to uphold State compensation protection by making the federal law applicable only "if recovery for the disability or death through workmen's compensation proceedings may not validily be provided by State law."

■ This Court is controlled in the construction of federal laws by the decisions of the Supreme Court of the United States. The case of Davis v. Department of Labor, 317 U. S. 249, 63 S. Ct. 225, 227, 87 L. Ed. 246, is a late decision of the Supreme Court of the United States construing the federal and state laws relating to this subject. In construing the federal laws in connection with state laws relating to injuries received by employees on the water fronts, in that case it was said:

"Harbor workers and longshoremen employed 'in whole or in part, upon the navigable waters' are clearly protected by this Federal act; but, employees such as decedent here occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. This Court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must 'be determined in view of surrounding circumstances as cases arise.' Baizley Iron Works v. Span, 281 U. S. 222, 230, 50 S. Ct. 306, 307, 74 L. Ed. 819. The determination of particular cases, of which there have been a great many, has become extremely difficult. It is fair to say that a number of cases can be cited both in behalf of and in opposition to recovery here.

"The very closeness of the cases cited above and others raising related points of interpretation has caused much serious confusion. It must be remembered that under the Jensen hypothesis, basic conditions are factual: Does the state law 'interfere with the proper harmony and uniformity of' maritime law? Yet employees are asked to determine with certainty before

bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere. See e. g., Ayers v. Parker, D. C., 15 F. Supp. 447. Such a result defeats the purpose of the federal act, which seeks to give 'to these hard-working men, engaged in somewhat hazardous employment, the justice involved in the modern principle of compensation,' and the state acts such as the one before us which aims at 'sure and certain relief for workmen.'

\* \* \* \* \* \* \* \*

"Not only does the state act in the instant case appear to cover this employee, aside from the constitutional consideration, but no conflicting process of administration is apparent. The federal authorities have taken no action under the Longshoremen's Act, and it does not appear that the employer has either made the special payments required or controverted payment in the manner prescribed in the Act. 33 U. S. C. sec. 914(b) and (d), 33 U. S. C. A. sec. 914(b,d)."

Congress has definitely tried to get away from the rigid rule announced in the Jensen case. Congress also recognized the diverse conditions that existed in the several states, and undertook to give harbor workers the benefits of state compensation laws. The Supreme Court of the United States has undertaken to harmonize such laws, rather than bring on a conflict between them.

■ The rule is now generally accepted by the courts that "in order to give an admiralty court jurisdiction, the substance of the whole contract must be maritime." The Eclipse, (Dak. T.) 135 U. S. 599, 10 S. Ct. 873, 34 L. Ed. 269; The Nevigadora No. 73, D. C. N. J., 45 F. (2d) 639; Pillsbury Flour Mills Co. v. Interlake S. S. Co., 2 Cir., 40 F. (2d) 439, affirming D. C., 36 F. (2d) 390, certiorari denied 282 U. S. 845, 51 S. Ct. 24, 75 L. Ed. 750; Home Ins. Co. of New York v. Merchants' Transportation Company, 9 Cir., 16 F. (2d) 372, affirming D. C., 12 F. (2d) 931; Berton v. Tietjen & Lang Dry Dock Co., D. C. N. J., 219 F. 763; State v. Duffy, 113 Ohio St. 96, 148 N. E. 572. See 2 C. J. S., Admiralty, sec. 24, and cases cited in the footnotes. If the nonmaritime feature of the contract is incidental to the contract, it will not defeat the jurisdiction of

admiralty. But if the contract is both maritime and nonmaritime and ordinarily indivisible, so that the rights of the parties can not be adjusted separately in admiralty or elsewhere, then admiralty will not have jurisdiction. Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 19 F. (2d) 777, 779, affirming D. C., 15 F. (2d) 203, certiorari denied American Exchange Irving Trust Co. v. Bonnasse, 275 U. S. 551, 48 S. Ct. 114, 72 L. Ed. 421, quoting Eastern Massachusetts St. Ry. Co. v. Transmarine Corporation, 1 Cir., 42 F. (2d) 58, 63, 64, certiorari denied 282 U. S. 883, 51 S. Ct. 86, 75 L. Ed. 779; Pillsbury Flour Mills Co. v. Interlake S. S. Co., 2 Cir., 40 Fed. (2d) 430, affirming D. C., 36 F. (2d) 390, certiorari denied 282 U. S. 845, 51 S. Ct. 24, 75 L. Ed. 750. See 2 C. J. S., Admiralty, sec. 24.

■ The case of Brown v. Aetna Casualty & Surety Co., 135 Texas 533, 145 S. W. (2d) 171, involved a suit under the Workmen's Compensation Act to set aside an award of the Industrial Accident Board. The trial court held in that case, as the trial court held in this case, that it was a suit in which a court of admiralty had exclusive jurisdiction, and dismissed the suit for want of jurisdiction. The court of civil appeals affirmed the action of the trial court. This Court granted a writ of error, and in an exhaustive opinion reviewed the decisions of the federal and state courts, and reversed and remanded the cause for further proceedings. It was contended there, as it is contended here, that the injured employee came under the provisions of the federal law, instead of under the state law. This Court in that opinion overruled the judgments of the trial court and the court of civil appeals, and approved the rule which is stated in 56 A. L. R. at page 356, as follows:

"In 1 Am. Jur., Admiralty, Sec. 50, p. 576, the rule is stated in this language:

"State statutes providing compensation for employees through commissions may be treated as amending or modifying the maritime law in cases where they concern purely local matters and occasion no interference with the uniformity of such law in its international and interstate relations. Thus, where the injured person was employed under a nonmaritime contract, state compensation acts, whether compulsory or elective, have been held applicable, whether the injury occurred on land, or on water within admiralty jurisdiction."

Millers' Indemnity Underwriters v. Boudreaux et al., Tex.

Com. App., 261 S. W. 137, 138, involved the same question we have here. It was contended in that case that the Workmen's Compensation Act did not apply, and that a court of admiralty had exclusive jurisdiction. It was shown that Boudreaux at the time of his death was working for the National Shipbuilding Company on the waters of Sabine River, which is admittedly a navigable stream. The shipbuilding company carried compensation insurance in Millers' Indemnity Underwriters. In that case the rule stated in 1 C. J. 1266; 2 C. J. S., Admiralty, sec. 24 was approved, which reads as follows:

"A maritime contract must therefore concern transportation by sea, it must relate to navigation, and to maritime employment; it must be one of navigation and commerce or navigable waters. It is not enough that the service which sprang from the contractual relation be performed on water, or even that it be done on board, and for the benefit of a vessel which is afloat."

In that case the judgments of the trial court and court of civil appeals, which held that the state court had jurisdiction under the Workmen's Compensation Act, were affirmed; and the Supreme Court of the United States affirmed that judgment in a case styled Millers' Indemnity Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470.

F. K. Warner, who was in charge of the "pay and time department" of the company at the time petitioner was injured, and C. R. Beason, who at that time was "personnel director and safety director" of the company and was in charge of hiring and firing employees, both testified in detail as to how the work was done, and both testified that they did not know whether petitioner was employed under a nonmaritime or martime contract. The facts of this case show that petitioner was doing certain work that could not be classified, as a matter of law, as of such a maritime nature as to bring his case exclusively under the jurisdiction of a court of admiralty. Furthermore, it is shown that petitioner was working for Levingston Shipbuilding Company, which carried a policy of insurance under the Workmen's Compensation Act of Texas; and it is also shown that whatever proceedings were had after the injury to petitioner, were carried on under that act, and no effort was made to protect petitioner's rights, if any, under the Longshoremen's Act.

Tested by the decisions of the Supreme Court of the United

504

States and the decision of this Court, the facts of this case do not show, as a matter of law, that a court of admiralty had exclusive jurisdiction of the case, and the trial court and the court of civil appeals erred in so holding.

The judgments of the trial court and court of civil appeals are reversed, and this cause is remanded to the trial court for a trial upon its merits.

Opinion delivered February 4, 1948.

Rehearing overruled March 24, 1948.