William John EICHELBERGER, Petitioner,

v.

Helen Beatrice EICHELBERGER, Respondent.

No. B-7239.

Supreme Court of Texas.

May 23, 1979.

Rehearing Denied July 11, 1979.

Segrest, Mills, Cameron & Riley, Philip R. Segrest, Waco, for petitioner.

Bedford D. Edwards and Erich W. Schwartze, III, Waco, for respondent.

SPEARS, Justice.

This is a divorce case. The sole question presented is whether the Supremacy Clause of the United States Constitution preempts a division by the state court of Texas of a spouse's entitlement to benefits under the federal Railroad Retirement Act of 1974. 45 U.S.C.A. § 231 et seq. The trial court awarded the wife a portion of the husband's expected benefits, both vested and contingent, as a part of the division of their community property, and the Court of Civil Appeals affirmed. 557 S.W.2d 587. This court heretofore refused to grant Petitioner's application for writ of error for "want of jurisdiction," but granted the application upon motion for rehearing. We now reverse the judgment of the Court of Civil Appeals, render judgment that the wife is not entitled to a part of the husband's future railroad retirement benefits and affirm the remainder of the trial court's judgment.

## JURISDICTION

The threshold question that confronts this court is whether or not the conflict between the decision of the Court of Civil Appeals in this case and the recent decision of the Supreme Court of the United States in the case of *Hisquierdo v. Hisquierdo,* —— U.S. ——, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), confers jurisdiction upon this court to correct the error of the Court of Civil Appeals.

Article VI, Clause 2, of the Constitution of the United States, known as the Supremacy Clause, provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Article I, Section 1, of the Constitution of Texas, expressly acknowledges that the State of Texas is subject to the Constitution of the United States. This court must recognize and follow the supreme law of the land. *Emmons v. Pacific Indemnity Co.,* 146 Tex. 496, 208 S.W.2d 884 (1948); *Gutierrez v. El Paso & N. E. R. Co.,* 102 Tex. 378, 117 S.W. 426 (1909); *McKee v. Brooks,* 64 Tex. 255 (1885). In *Emmons* we said that this court was controlled in the construction of federal laws by the decisions of the Supreme Court of the United States.

We hold that under Article V, Sections 1 and 3, of the Constitution of Texas, the Supreme Court of Texas possesses the power, and thus the duty, to correct a decision of a Court of Civil Appeals that conflicts with the "supreme law of the land" as established by the Congress and Supreme Court of the United States.

The Supreme Court of Texas is vested with both original and appellate jurisdiction. Our express grant of appellate jurisdiction is contained in Tex.Const. Article V, Section 3, which provides in part:

"Sec. 3. The Supreme Court shall have appellate jurisdiction only except as herein specified, which shall be co-extensive with the limits of the State. Its appellate jurisdiction *shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction* under such restrictions and regulations as the Legislature may prescribe. *Until otherwise provided by law* the appellate jurisdiction of the Supreme Court *shall extend to questions of law arising in the cases in the Courts of Civil Appeals* in which the Judges of any Court of Civil Appeals may disagree, or where the several Courts of Civil Appeals may hold differently on the same question of law or where a statute of the State is held void. . . . " (Emphasis supplied.)

Pursuant to this constitutional provision, we have statutory jurisdictional authority in Tex.Rev.Civ.Stat.Ann. Art. 1728 (Vernon 1962). In this case we can only look to sections 1 and 2 since divorce cases are otherwise made final in the Court of Civil Appeals. Tex.Rev.Civ.Stat.Ann. Art. 1821(3) (Vernon 1964). There is no dissent which would give us jurisdiction under section 1. Section 2 states that we have appellate jurisdiction "extending to all questions of law arising in the following cases when same have been brought to the Courts of Civil Appeals from appealable judgment of trial courts: . . . 2. Those in which one of the Courts of Civil Appeals holds differently from a prior decision of another Court of Civil Appeals, or of the Supreme Court upon a question of law material to a decision of the case." No mention is made of a conflict upon a question of law between a Court of Civil Appeals and the Supreme Court of the United States.

Since we are now faced with a case in which no express grant of jurisdiction exists, we must look to the nature of the whole judicial power granted to the courts of this state by Tex.Const. Art. V, Sec. 1, to ascertain jurisdiction. That constitutional provision specifically vests the "judicial power of this state" in one Supreme Court, in one Court of Criminal Appeals, in Courts of Civil Appeals, in District Courts, in Coun-

ty Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

The judicial power is divided among these various named courts by means of express grants of "jurisdiction" contained in the constitution and statutes. The "jurisdiction" of a particular court is that portion of the judicial power which it has been expressly authorized to exercise by the constitution or statutes. *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933).

In addition to the express grants of judicial power to each court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute. These powers are woven into the fabric of the constitution by virtue of their origin in the common law and the mandate of Tex.Const. Art. II, Sec. 1, of the separation of powers between three co-equal branches. They are categorized as "implied" and "inherent" powers, though some courts have also used the terms incidental, correlative and inferred.

Both implied and inherent powers exist in this state, each with separate and independent meaning. The courts of this state have long recognized these powers. Their use has continued unchallenged through constitutional revision, express legislative confirmation, as well as the sometimes overbroad statements of our own courts. These statements have resulted from confusion and overlap, and from a failure or refusal to recognize the distinction between implied and inherent powers. *See State v. Pounds*, 525 S.W.2d 547 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100, 109 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.); *see also State v. Cannon*, 206 Wis. 374, 240 N.W. 441 (1932). We believe that the distinction between them is important.

The *inherent* judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.[1] Inherent power

---

1. Texas courts have recognized or utilized their inherent powers in the following instances: to change, set aside or otherwise control their judgments, *A. F. Jones & Sons v. Republic Supply Co.*, 151 Tex. 90, 246 S.W.2d 853 (1952); *Nevitt v. Wilson*, 116 Tex. 29, 285 S.W. 1079 (1926); *Townes v. Lattimore*, 114 Tex. 511, 272 S.W. 435 (1925); *In re House Bill 537*, 113 Tex. 367, 256 S.W. 573 (1923); *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040, 1041 (1912); *Cohen v. Moore*, 101 Tex. 45, 104 S.W. 1053 (1907); *Gage v. Dallas Power & Light Co.*, 241 S.W.2d 196 (Tex.Civ.App.—Dallas 1951, no writ) (per curiam); to summon and compel the attendance of witnesses, *Burttschell v. Sheppard*, 123 Tex. 113, 69 S.W.2d 402 (1934); *Bludworth v. State*, 168 Tex.Crim. 549, 330 S.W.2d 436, 438 (1959); to punish by contempt, *Ex Parte Browne*, 543 S.W.2d 82 (Tex. 1976); *Cleveland v. State*, 508 S.W.2d 829, 831 (Tex.Crim.App.1974); *Ex Parte Myrick*, 474 S.W.2d 767, 769 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ); to regulate the admission and practice of law, *Scott v. State*, 86 Tex. 321, 24 S.W. 789, 790 (1894) (power to disbar is inherent judicial power); *State v. Tunstall*, 51 Tex. 81, 86 (1879); *Jackson v. State*, 21 Tex. 668, 672–73 (1858); *State v. Pounds*, 525 S.W.2d 547 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.) (power to disbar); *Grievance Committee, State Bar of Texas, Twenty-First Cong. Dist. v. Coryell*, 190 S.W.2d 130, 131 (Tex.Civ.App.—Austin 1945, no writ) (inherent power to determine what constitutes practice of law); *Grievance Committee, State Bar of Texas, Twenty-First Cong. Dist. v. Dean*, 190 S.W.2d 126 (Tex.Civ.App.—Austin 1945, no writ); *Bryant v. State*, 457 S.W.2d 72, 78 (Tex. Civ.App.—Eastland 1970, writ ref'd n. r. e.); *Burns v. State*, 76 S.W.2d 172 (Tex.Civ.App.—Ft. Worth 1934), *rev'd on other grounds*, 103 S.W.2d 960 (Tex.Comm'n App.1937, opinion adopted); Tex.Atty.Gen.Op. No. M–393 (1969); cf. *Hexter Title & Abstract Co. v. Grievance Committee, Fifth Cong. Dist., State Bar of Texas*, 142 Tex. 506, 179 S.W.2d 946 (1944); *Wichita County v. Griffin*, 284 S.W.2d 253 (Tex.Civ. App.—Ft. Worth 1955, no writ); and to provide personnel to aid the court in the exercise of its judicial function, *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100, 109 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.) (power to provide for adult probation officers).

This court has also exercised its inherent judicial power by establishing a Code of Judicial Conduct, 513 S.W.2d foreward p. XXXIII et

of the courts has existed since the days of the Inns of Court in common law English jurisprudence. *Nevitt v. Wilson*, 116 Tex. 29, 285 S.W. 1079, 1083 (1926); *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 162 N.E. 487 (1928). It also springs from the doctrine of separation of powers between the three governmental branches. Tex.Const. Art. II, Sec. 1. This power exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity.

■ The *implied* powers of a court do not stand on such an independent basis as those described as inherent. Though not directly or expressly granted by constitutional or legislative enactment, implied powers are those which can and ought to be implied from an express grant of power. These powers were recognized by this court in *Ex Parte Hughes*, 133 Tex. 505, 129 S.W.2d 270 (1939), where the court reversed a contempt conviction because the district court had no jurisdiction over the case. The defendant Hughes had failed to produce documents under the court's subpoena in a usury suit brought by the State of Texas. We held that the court had no jurisdiction over the case since the usury statute provided a remedy between private individuals only, and such remedy could not be enforced by the state. In so doing, however, we recognized the existence of implied jurisdictional powers by the following language:

"Under our judicial system our courts have such powers and jurisdiction as are defined by our laws constitutional and statutory. Under our system there is no such thing as the inherent power of a court, 'if, by that, be meant a power which a court may exercise without a law authorizing it.' *Messner v. Giddings*, 65 Tex. 301. Of course *jurisdiction is granted by law when it is either directly conferred or ought to be implied from the jurisdiction directly granted.* In other words, our courts have such powers and jurisdiction as are directly provided by law, and, in addition thereto, *they have such further powers and jurisdiction as are reasonably proper and necessary,—* that is, as ought to be inferred, from the powers and jurisdiction directly granted." *Id.* 129 S.W.2d at 273. (Emphasis supplied.)

See *Burttschell v. Sheppard*, 123 Tex. 113, 69 S.W.2d 402 (1934).

The language of *Hughes* was overbroad when it categorically denied the existence of the inherent power of a court and such language is disapproved. Several other cases decided by this court have similarly stated that inherent powers of the court do not exist; however, closer examination reveals that such statements which have negated the existence of inherent power were made to deny the existence of a court's inherent "jurisdictional" power. Our holdings have simply been that we have no inherent power to take jurisdiction of a case when that jurisdiction has been expressly or impliedly granted to another court of this

seq. (Texas Cases Only), by authorizing legal specialization programs (Order dated July 16, 1974), and by regulating advertising by attorneys (Orders dated May 26, 1978 and December 13, 1978).

The legislature has confirmed a court's inherent powers necessary for the exercise of its jurisdiction and enforcement of its orders. Tex.Rev.Civ.Stat.Ann. art. 1911a (Vernon's Supp.1978–79).

Virtually every state in the United States has recognized the inherent power of the supreme court of that state to regulate the admission and practice of law. *See*, J. Parness, *Citations and Bibliography on the Unified Bar in the United States, Report of American Judicature Society* (1973). For instances of impermissible legislative encroachment on this power, *see Sharood v. Hatfield*, 296 Minn. 416, 210 N.W.2d

275 (1973); *Graham v. State Bar Ass'n*, 86 Wash.2d 624, 548 P.2d 310 (1976).

In several jurisdictions, courts have invoked their inherent powers to require the payment of reasonable and necessary expenses that were essential to allow the court to function, e. g., *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738 (1963); *Noble County Council v. State ex rel. Fifer*, 234 Ind. 172, 125 N.E.2d 709 (1955); *Judges for the Third Judicial Circuit v. County of Wayne*, 383 Mich. 10, 172 N.W.2d 436, 441 (1969), opinions substituted, 386 Mich. 1, 190 N.W.2d 228 (1971); *State ex rel. Schneider v. Cunningham*, 39 Mont. 165, 101 P. 962 (1909); *State ex rel. Kitzmeyer v. Davis*, 26 Nev. 373, 68 P. 689, 690–91 (1902); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971). *See generally*, Annot., 59 A.L.R.3d 569 (1974).

state. In so doing, we have recognized a distinction between implied and inherent powers, in regard to jurisdiction.

■ This is illustrated by returning the statement concerning inherent powers found in *Ex Parte Hughes, supra*, to its original context in *Messner v. Giddings*, 65 Tex. 301 (1886). There this court held that a district court had no power to exercise original jurisdiction which had been conferred on county courts alone. When the constitution expressly grants jurisdiction over a particular subject matter to a particular court and not upon another, then it is to be presumed that the "jurisdiction" so conferred is exclusive. *Messner v. Giddings*, 65 Tex. 301, 310 (1886).

Likewise in *Pope v. Ferguson*, 445 S.W.2d 950 (Tex.1969), we denied having inherent powers in a jurisdictional matter on the basis of *Messner v. Giddings, supra*, and *Ex Parte Hughes, supra*. In *Ferguson*, we declined to use our mandamus powers on the grounds that an adequate remedy existed by appeal and that areas of conflict between our power and the power expressly granted to the Court of Criminal Appeals would exist, should the petition for mandamus be granted. We said that it was our duty to avoid conflicts when we could do so in good conscience. It was only in the context of this duty to avoid intrusion into another court's express jurisdiction, that we denied having inherent power.

As we have said, this court does possess inherent powers separate and distinct from our jurisdictional power; however, in the case now before us the exercise of inherent powers as we have defined them here is not appropriate. Rather, we are called upon to exercise a judicial power not within our express grant of jurisdiction.

■ The constitution expressly gives this court jurisdiction to review questions of law arising in cases decided by the Court of Civil Appeals. Tex.Const. Art. V, Sec. 3; Tex.Rev.Civ.Stat.Ann. Art. 1728 (Vernon 1962); *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376 (Tex.1965); *Ex Parte Godeke*, 163 Tex. 387, 355 S.W.2d 701 (1962). From this express grant we hold our jurisdictional power to decide the case before us is implied. *Ex Parte Hughes, supra; Burttschell v. Sheppard, supra*. No other department of the government of Texas has the jurisdiction or the mechanism to correct such decision of a Court of Civil Appeals except the Supreme Court of Texas. A patent anomaly would exist if, within the sovereign State of Texas, no department, branch or official had the power to enforce in this case the mandate of the federal Supremacy Clause and the recognition of that supremacy by Tex.Const. Art. I, Sec. 1. We hold, therefore, that the Supreme Court of Texas has jurisdiction to correct a decision of the Court of Civil Appeals which is contrary to a decision of the United States Supreme Court.

## FACTS AND BACKGROUND

Petitioner William Eichelberger began working for the railroad in 1946. In June of 1957, he and Helen Eichelberger, Respondent, were married. In 1973, William was placed on disability retirement under the Railroad Retirement Act of 1937 (45 U.S.C.A. § 228a et seq.). They continued living together as husband and wife until they separated in April, 1976, and Helen filed her petition for divorce.

At the time the divorce was granted by the trial court, the parties had been married for 19 years. William was 54 years old and was employed at a motel for $50 per week from which he paid $10 per week for his room. He also received $419.95 each month as his railroad retirement benefits. Helen, on the other hand, had minor education, and she was without education or skill to qualify her for any particular employment. According to her sworn petition, she was 57 years of age at the time of trial. She was living in rented quarters and had $50 cash and three $25 United States Savings Bonds. Her income was from babysitting at $5 per day, however, she had no children to sit with at the time of the trial. The trial court correctly found that there was "considerable disparity" in their earning capacities. There were no children of the marriage.

The parties agreed to a division of their community property, but the question of whether Helen was entitled to any property interest in William's railroad retirement benefits was left for decision by the court. The trial court awarded to each the property in his and her possession as his and her separate estate pursuant to their property settlement agreement. The court then divided the retirement benefits by awarding Helen 40% of all future retirement and disability benefits (and increases) to be paid William "growing out of his employ or services as a railroad employee." The court ordered William to deposit Helen's 40% to her account at the Citizens National Bank of Waco, Texas.

The Court of Civil Appeals upheld the actions of the trial court. After dismissing the husband's application for writ of error for want of jurisdiction in March 1978, we withheld action on Petitioner's motion for rehearing pending decision by the Supreme Court of the United States in a case arising out of California, *Hisquierdo v. Hisquierdo,* 19 Cal.3d 613, 139 Cal.Rptr. 590, 566 P.2d 224 (1977), *cert. granted,* 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 82 (April 24, 1978).

## FEDERAL PREEMPTION

The Supreme Court of the United States on January 22, 1979, handed down its decision in *Hisquierdo v. Hisquierdo,* —— U.S. ——, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). The court held that benefits payable under the Railroad Retirement Act and the expectation of ultimately receiving future benefits under the Act are not subject to division by a state court as "property" upon divorce. The court further held that state courts in community property states may not "anticipate" such benefits by awarding upon divorce such other property of the parties that would compensate the non-employee spouse for the denied benefits in the retirement.

The United States Supreme Court reasoned that its decision effected congressional intent and prevented frustration of federal policy. It held that under the Supremacy Clause, California community property law as announced by the California Supreme Court was preempted by the express terms of the Railroad Retirement Act, especially the strong anti-attachment clause, § 231m, which provides that the benefits shall not be subject to any "legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." Thus the holding of the California Supreme Court, *In re Hisquierdo,* 19 Cal.3d 613, 139 Cal.Rptr. 590, 566 P.2d 224 (1977), that the retirement benefits under the Act were community property even though the benefits had not vested at the time of divorce, was reversed, and the case was remanded for further proceedings not inconsistent with the opinion.[2]

It is clear that the *Hisquierdo* decision controls the disposition of this case. We held in *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976), that retirement benefits earned during the marriage constitute a community asset subject to division and consideration in the equitable division of the community estate of the parties upon divorce even though the rights are contingent and not yet matured or vested. By virtue of *Hisquierdo,* however, this rule cannot now apply to benefits of the Railroad Retirement System. Even though the majority in *Hisquierdo* does not expressly hold that the anticipated benefits are not property, the court's opinion makes it clear that such benefits are not to be treated as "property" and future benefits are not subject to division upon divorce as property.

The holding of the Court of Civil Appeals affirming the judgment of the trial court which awarded Helen Eichelberger 40% of William's railroad retirement benefits as a fair and equitable division of the property of the parties is therefore erroneous and must be reversed.

**2.** This is not the first decision of the Supreme Court of the United States to hold that federal law preempts the application of state community property laws. See *Yiatchos v. Yiatchos,* 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950); *McCune v. Essig,* 199 U.S. 382, 26 S.Ct. 78, 50 L.Ed. 237 (1905).

ALIMONY

The *Hisquierdo* holding is plain that railroad retirement benefits cannot be reached by "legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated ·. . .," quoting 45 U.S.C.A. § 231m. The only exception to this rule is found in Section 459 of the Social Security Act, 42 U.S.C.A. § 659, which permits the garnishment of railroad retirement benefits to satisfy an obligation for alimony or child support. In 1977, Congress defined "alimony" to exclude "any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C.A. § 662(c). In *United States v. Stelter,* 567 S.W.2d 797 (Tex.1978), this court held that a former wife could not garnish her ex-husband's military retirement payments of which she had been awarded a part in a divorce decree, citing this definition.

Respondent Helen Eichelberger argues earnestly that because of the ruling in *Hisquierdo,* the only way she can be compensated for her loss of any property rights to the railroad retirement benefits is by awarding her alimony for which payment can be enforced under the provisions of 42 U.S.C.A. § 659. She correctly points out that there was no other property existing at the time of divorce that could be awarded to her to do equity other than a portion of the railroad retirement benefits. Since those are not available to her, and indeed the Supreme Court has said other property could not be awarded to her to compensate for the loss of those benefits, she urges that this court should reconsider its concept that alimony is against public policy in Texas.

Alimony has been declared to be contrary to the public policy of this State since 1841. *Cunningham v. Cunningham,* 120 Tex. 491, 40 S.W.2d 46, 47 (1931). In recent years, however, several exceptions have been carved out of the general rule by this court. In *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722 (1961), we allowed a foreign decree of alimony to be enforced in Texas under the principles of comity. We there held that enforcement of such a decree was not violative of public policy because the property was in existence at the time of the divorce. In *Francis v. Francis,* 412 S.W.2d 29 (Tex.1967), we allowed the enforcement of contractual alimony and held that the public policy against alimony applied only to court-ordered alimony, not to contractual alimony.

■ Counsel for the wife strenuously urges that this court create another exception to that public policy and allow court-ordered "income" alimony in those cases where federal retirement entitlements have been held by preemption to be "nonproperty." They cite in support of their arguments Sampson, *Common Law Property In a Texas Divorce: After Eggemeyer, the Deluge?,* 42 Tex.B.J. 131 (1979); Corrigan, *Federal Retirement Benefits in Texas: Division as Property Right Between Former Spouses by Divorce Court,* 41 Tex.B.J. 435 (1978); Turley, *A Wife's Right to Support Payments in Texas,* 16 So.Tex.L.J. 1 (1974).

We decline to do so. First, any attempt by a Texas court to substitute court-ordered alimony for a property division at this stage of the proceedings would doubtless be viewed by the Supreme Court of the United States as a transparent attempt to circumvent the proscription of Section 231m by "anticipating" the payment of such benefits.

Second, in light of the long-standing public policy against alimony in this state and the general incompatibility of the principle of spousal support after divorce with the community property system as it has existed in Texas since the Republic of Texas, we believe it to be a proper function of the Legislature to determine whether it is to be authorized, even in the limited circumstances of railroad retirement benefits. If alimony based upon spousal need and payable from future earnings and/or property not in existence at the time of divorce is needed in this state because of decisions such as *Hisquierdo,* it should come about after careful consideration is given to the entire

scheme of the community property system of Texas. The United States Supreme Court has said that enforceable alimony is limited to its "traditional common-law meaning of spousal support," a concept foreign to our Texas system of community property law applicable upon divorce. Alimony, whether instituted as a right or as a remedy, must fit into the larger system of marital property law in a logical way and only after thorough study of all aspects of Texas' community property law. This is a legislative, not a judicial function, and may require constitutional amendments which are the responsibility of the Legislature.

Normally, the proper disposition of this case would be to remand the cause to the trial court for a complete redistribution of the estate of the parties under Section 3.63 of the Texas Family Code (Vernon 1975). *McKnight v. McKnight,* 543 S.W.2d 863 (Tex.1976). Here, however, because of the United States Supreme Court's statements forbidding state courts to award the non-employee spouse other property to compensate for or "anticipate" the benefits, a remand would accomplish nothing. Accordingly, we reverse and render that part of the trial court's judgment as affirmed by the Court of Civil Appeals that awards Respondent wife a portion of her husband's railroad retirement benefits and order that she take nothing thereunder. The remainder of the trial court's judgment is affirmed.

SAM D. JOHNSON, J., dissents.

SAM D. JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

This writer has no disagreement with the discussion of inherent and implied powers

of this court. Further, this writer has no disagreement with a more encompassing view of the jurisdiction of this court, circumscribed only by the Constitution and enabling statutes of this state.

This writer does not believe, however, that this is an appropriate case in which to exercise those powers so as to expand the jurisdiction of this court beyond the limits of the Texas Constitution and statutes. This court has historically operated under a limited jurisdiction, restricted by the Texas Constitution and statutes. *See* Hart, *The Appellate Jurisdiction of the Supreme Court of Texas,* 29 Tex.L.Rev. 285 (1951), and Moorhead, *Limitations Upon the Appellate Jurisdiction of the Supreme Court,* in Appellate Procedure in Texas, at 21–1 (1964).

Nevertheless, the majority opinion of this court now expands the jurisdiction of this court to include decisions by the courts of civil appeals that conflict with a "decision of the Supreme Court of the United States" or "the supreme law of the land." The *ratio decidendi* of the majority opinion is the Supremacy Clause and a conflict with "the supreme law of the land." This necessarily includes conflicts with federal statutes and the federal Constitution, as well as *any* United States Supreme Court decision.

The avenues to the federal courts have always been open to those not satisfied with the answers they received in the state courts. Many have met with success.[1] The majority's writing ignores the availability of a historically proven remedy.

This writer would dismiss the application for want of jurisdiction.

1. Particular attention is drawn to two cases in which the aggrieved parties reached the United States Supreme Court after this court had dismissed their applications for want of jurisdiction, which is the precise situation facing the petitioner in this case. *Adam v. Saenger,* 303 U.S. 59, 58 S.Ct. 28, 82 L.Ed. 515 (1937), *reh. denied,* 303 U.S. 666, 58 S.Ct. 640, 82 L.Ed. 1123 (1938); *Sullivan v. Texas,* 207 U.S. 416, 28 S.Ct. 215, 52 L.Ed. 274 (1908). *See also Powell v. Texas,* 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968); *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); *Michigan-Wisconsin P. L. Co. v. Calvert,* 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954); *Tucker v. Texas,* 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946); *Largent v. Texas,* 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Lone Star Gas Co. v. Texas,* 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304 (1938); *Grovey v. Townsend,* 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292 (1935); *Bacon v. State of Texas,* 163 U.S. 207, 16 S.Ct. 1023, 41 L.Ed. 132 (1896); Annot., 7 L.Ed.2d 1025.