163 S.W.3d 805 (2005)
In the Interest of C.G.B., a/k/a M.G.K., And J.R.B., a/k/a R.R.K., Children
No. 06-04-00054-CV.
Court of Appeals of Texas, Texarkana.
May 3, 2005.
Duke E. Hooten, Dept. of Family & Protective Services, Special Litigation Unit, Austin, for appellant Department of Family and Protective Services.
David Colley, Woodson, Colley & Colley, LLP, Mount Pleasant, for appellees Debbie Kludt and Wade Kludt.
Bird Old III, Mount Pleasant, for C.G.B., a/k/a M.G.K., and J.R.B., a/k/a R.R.K., Children.
Before MORRISS, C.J., ROSS and CARTER, JJ.

*806 OPINION
MORRISS, Chief Justice.
For almost two years[1] Wade and Debbie Kludt served as foster parents for C.G.B. and J.R.B.,[2] placed in their home by the Texas Department of Family and Protective Services. But the Kludts' hopes to adopt the children were first delayed, long beyond the required and customary time periods, and then were interrupted when the Department removed the children from the Kludt home. That removal was based on Department administrative findings that Debbie Kludt had inflicted a blunt force trauma on C.G.B. and then neglected the child's medical needs  findings contained in a Department letter dated May 21, 2003, but contradicted by the Kludts, who maintained C.G.B. was injured in a bicycle accident. The Kludts ultimately asked the trial court to name them, rather than the Department, managing conservators of the two children. Mediation proved futile. Over a year after the children had been removed from the Kludts' home, the trial court was finally able to bring the Kludts' request to a hearing. The court denied the Kludts possession of the children, because by contract the Department could remove the children from the Kludts' home without cause and because the children, by the time of the hearing, had been out of the Kludts home for over a year. The trial court, however, directed at the Department some strongly-worded negative findings, which are not relevant to this appeal; ruled the Department's administrative findings against the Kludts were unfounded; and entered a number of orders, only two of which are challenged in this appeal.
The Department appeals,[3] asking only that we strike from the trial court's order of April 8, 2004, the parts of the order exonerating the Kludts "from any wrongdoing toward" C.G.B. and J.R.B. and ordering the Department "to expunge from its records and its computer system the administrative findings contained in the letter dated May 21, 2003 and signed by Angela L. Nowell." The Department asserts that, once the trial court found the Kludts lacked standing, the trial court had no subject-matter jurisdiction to exonerate the Kludts or to order the Department's records expunged. We disagree and conclude the trial court had authority to enter its order because (1) the Kludts had standing, and (2) even if the Kludts lacked standing, the trial court had inherent power to enter the order.

The Kludts Had Standing
Ordinarily, standing must be established before a court will have the subject-matter jurisdiction essential to its power to decide a case. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 553-54 (Tex.2000). Here, the Kludts had standing under Section 102.003(a)(12) of the Texas Family Code, which provides that a suit seeking modification of the parent-child relationship may be filed by "a person who is a foster parent of a child placed by the Department . . . in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM. CODE ANN. § 102.003(a)(12) (Vernon Supp.2004-2005).
*807 The children were foster children in the Kludts' home from the time the Department placed them there, July 17, 2001, until the Department removed them April 2, 2003  a period of over twenty-one months. On June 19, 2003, seventy-eight days after the Department removed the children from their home, the Kludts filed their petition to modify. Therefore, pursuant to Section 102.003(a)(12), the Kludts had standing. The trial court erred in concluding they had none.[4] Because the Kludts had standing, the trial court's order can be sustained on that basis.

The Court Had Inherent Power To Enter the Order
But even if the Kludts had no standing to seek conservatorship of the children, the trial court clearly has a continuing statutory duty to oversee the children's case, including the Department's supervision of them.
For example, the supervising court must review the conservatorship appointment of the Department or another agency and the substitute care thereunder. TEX. FAM. CODE ANN. § 263.002 (Vernon 2002). The Department must create a "service plan" for each child in its custody within forty-five days after the court renders a temporary order appointing it temporary managing conservator. TEX. FAM. CODE ANN. § 263.101 (Vernon 2002). The plan must be filed with the court. TEX. FAM. CODE ANN. § 263.105(a) (Vernon 2002). In the plan, the Department must set out its goals for the child, specifying how it intends to seek a "permanent safe placement" for the child, whether by termination and placement for adoption, by return to their family, or by other means. TEX. FAM. CODE ANN. § 263.102 (Vernon 2002). The plan is explicitly subject to review by the court of continuing jurisdiction over the child. TEX. FAM. CODE ANN. § 263.105 (Vernon 2002).
The Department must prepare a "permanency plan" for each child. TEX. FAM. CODE ANN. § 263.3025 (Vernon 2002). The trial court must review the Department's permanency progress reports in connection with the "permanency plan" created for each child. TEX. FAM. CODE ANN. § 263.303 (Vernon 2002). The trial court's hearings must be held no less frequently than as set out by statute. See TEX. FAM. CODE ANN. §§ 263.304, 263.305 (Vernon 2002). The statutory scheme sets out a number of things that must be done by the trial court, including reviewing the appropriateness of the current placement; determining the plans, services, and orders needed to ensure that a final order is timely rendered; deciding whether the Department has made reasonable efforts to finalize the permanency plan; and projecting a likely date for the child to be placed for adoption. See TEX. FAM. CODE ANN. § 263.306 (Vernon 2002). At permanency hearings, the court is required to review the service plan, permanency report, and other information from the hearing, including the child's safety, the ongoing viability of the current placement, and the compliance and progress made, including whether the Department *808 has made reasonable efforts to finalize the permanency plan. TEX. FAM. CODE ANN. § 263.306(b). The court should always be guided by "the best interest of the child." See TEX. FAM. CODE ANN. § 263.307 (Vernon 2002).
The Department appears to be taking the position that the trial court's review may be focused on only the actions of parents or foster parents toward the child, not the Department's actions that affect the child. The statute makes no such distinction, and there is no more reason to permit an agency to act outside the best interest of a child than to allow a parent to do so. Accordingly, the actions taken by the trial court fall well within the ambit of its explicit and implicit authority to review this type of proceeding, and it is clear from the court's findings that, in doing so, it was properly performing its duty to C.G.B. and J.R.B.[5]
We affirm the judgment.
NOTES
[1] The Kludts had the children in their possession from July 17, 2001, to April 2, 2003.
[2] In the Placement Review Order dated March 11, 2004, C.G.B. is also called M.G.K., and J.R.B. is also called R.R.K.
[3] The Kludts do not appeal.
[4] The Department also argues that, because the Kludts did not perfect an appeal, we cannot review the trial court's finding that they had no standing. The Department's own argument, however, rests solely on its position that the trial court correctly concluded the Kludts had no standing. The Department asks us to partially reverse the trial court's order. Before we can reverse based on an erroneous ruling by a trial court, the Department must show that the trial court's error was harmful. See TEX. R. APP. P. 44.1. In this case, even if the trial court erred by addressing additional matters after finding the Kludts had no standing, that error would not be harmful because the trial court erred in concluding the Kludts lacked standing.
[5] At oral argument, the Department also argued that the Kludts had not exhausted their administrative remedies before filing suit. That matter was not addressed or discussed either in the agency's brief or before the trial court, and we will therefore not address that matter here, beyond noting that the trial court's authority to review the Department's activities is not limited by the choices made by the foster parents whether to pursue relief from the Department. The duty of the trial court is to review activities that affect the child, and that duty is not restricted by the choices of either the foster parents or the Department.