

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-22-00040-CV

**IN RE THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

Original Mandamus Proceeding[1]

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: June 1, 2022

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

The child at the center of this case is N.P., a fourteen-year-old native Ukrainian who has been in the managing conservatorship of the Department of Family and Protective Services (the "Department") since December 5, 2018. In the underlying proceeding, the trial court ordered the Department to submit a written offer for a child-specific contract for the placement of N.P. in the amount of $2,000 per day to Pathways, Bair Foundation Trulight, Cowie Family (Hearts to Home) in Florida, Mosaic, and up to three child-placing agencies recommended and submitted to the Department by N.P.'s attorney and guardian ad litem. The trial court also ordered the Department to include within the written offer for a child-specific contract an additional $500.00 per day subsidy for the first nine months of placement for a licensed professional counselor, or someone

[1] This proceeding arises out of Cause No. 2017-PA-01702, styled *In the Interest of N.P., a Child*, pending in the 288th Judicial District Court, Bexar County, Texas. The Honorable Mary Lou Alvarez signed the order at issue in this proceeding.

with a greater level of degree, to provide therapy/counseling services to N.P. The Department filed a motion to stay the order, which was granted, and a petition for writ of mandamus complaining of the order. The trial court (hereinafter "the trial court" or "respondent") and two ad litems filed responses. We conditionally grant the petition for writ of mandamus.

## MANDAMUS STANDARD OF REVIEW

To be entitled to mandamus relief, the Department must show the trial court committed a clear abuse of discretion and the Department has no adequate remedy by appeal. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). A trial court abuses its discretion if "'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law'" or if it clearly fails to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 839, 840 (Tex. 1992) (citation omitted). A "mandamus will not issue when the law provides another plain, adequate, and complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006). However, if the complained-of order is void, the Department does not have to show a lack of an adequate appellate remedy for mandamus relief to be appropriate. *See In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam). "A judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) (citation omitted).

## BACKGROUND

The parental rights of N.P.'s parents have been terminated, and the Department was named her permanent managing conservator. Since May 2018, N.P. has been placed by the Department in seventeen different placements. Currently, her placement status is a "Child Without Placement"

and she carries a service level of "Intense."[2]  N.P. was discharged from her most recent placement due to her poor behavior.  This behavior manifested itself in extreme aggressiveness, self-harm, and inability to follow authoritative direction.

On December 13, 2021, the trial court granted a Motion for Enforcement of Placement and ordered monetary sanctions on the Department for failing to comply with a previous court order to find a placement for N.P. (the "December 13th order").  A week later, the court held a hearing to inquire as to whether the parties were in compliance with the December 13th order.  Because the Department failed to comply with the December 13th order, the trial court rendered another order whereby a portion of the sanctions ordered on December 13th were to be placed in a separate fund for N.P.'s Christmas presents.

Three days later, the trial court held another hearing.  Following testimony from Department representatives that the Department had yet to find a placement for N.P., the trial court amended its December 13th order to include further monetary sanctions on the Department.  The trial court held yet another hearing on January 14, 2022, during which Department representatives testified to the extensive efforts made to find placement for N.P. since the issuance of the modified December 13th order.  After considering the testimony, the trial court announced in open court, "I will no longer be the trial court that becomes complicit in the Department's incompetence and failure of duty to place this child where she needs to be."  Although an order was orally rendered on January 14th, a written order was not signed until February 4, 2022 (the "February 4th order").  The February 4th order stated the following:

> IT IS ORDERED that the Department submit a written offer for a child specific contract in the amount of $2,000 per day to Pathways, Bair Foundation Trulight,

---

[2] "The Intense Service Level consists of a high degree of structure, preferably in a family, to limit the child's access to environments as necessary to protect the child.  The caregivers have specialized training to provide services to help the child keep, learn or improve skills and functioning for daily living as well as intense therapeutic supports and interventions with limited outside access[.]"  40 TEX. ADMIN. CODE § 700.2361(a).

Cowie Family (Hearts to Home) in Florida, Mosaic, and up to 3 child placing agencies recommended and submitted to the Department by Mrs. Alana Pearsall, the child's attorney and guardian ad litem for the placement of [N.P.] consistent with Judge Garcia's February 10, 2020 order.

> 3.1.1. IT IS ORDERED that the Department shall submit the referenced written offer for a child specific contract to the agencies no later than 9:00 a.m. on Tuesday, January 18, 2022.

> 3.2. IT IS FURTHER ORDERED that the Department include within the written offer for a child specific contract an additional $500.00 per day subsidy for the first 9 months of placement for an [sic] licensed professional counselor, or someone with a greater level of degree, to provide therapy/counseling services to [N.P.]

> 3.3. IT IS FURTHER ORDERED that the Department hire or contract with a tutor to provide one on one educational instruction to [N.P.] for 3 hours per day.

> > 3.3.1. The Department shall arrange for the tutoring instruction to begin no later than 10:00 a.m. on January 19, 2022 and continue daily until:

> > > 3.3.1.1. The behaviors of [N.P.] improve to the degree she is able to attend school; OR
> > > 3.3.1.2. A placement consistent with Judge Garcia's February 10, 2020 order is found for [N.P.]

> > 3.3.2. The Department shall hire a tutor in order to comply with this order and shall provide the identity and contact information for the selected individual to ALANA PEARSALL, CECILIA HELLRUNG, MARIA SALAZAR, and KATY PADILLA STOUT no later than 5:00 p.m. on January 18, 2022.

The trial court later denied the Department's motion to reconsider.

Following entry of the February 4th order, the Department filed this original proceeding arguing the order: (1) violated the separation of powers clause by interfering with the Department's duties, (2) violated sovereign immunity by creating a debt on behalf of the State of Texas, (3) was a prohibited gift of public funds in the form of unenforceable contracts, and (4) was not in N.P.'s best interest. We address only the separation of powers issue because it is dispositive.

## SEPARATION OF POWERS

The Department argues the trial court violated the Separation of Powers Clause under the Texas Constitution when it ordered the Department to create a specific contractual obligation of $2,500 a day for N.P.'s placement and services with specific child-placing agencies. The Department asserts the Legislature, through the Health and Human Services Commission, vested the express power in the Department to procure Department contracts.

The respondent counters the Department by arguing: (1) she had proper statutory authority to enter appropriate orders following her review of the Department's permanency plan, and (2) sovereign immunity did not prohibit her from issuing orders that required the Department to fulfill obligations to children within the Department's care. The respondent cites to no statutory authority for her actions. Instead, she asserts this court should reject any argument that the Legislature would require a trial court to conduct hearings to review the Department's care of the children entrusted to it while at the same time prevent the court from taking action it deems necessary following such review. She contends she has the implied power to control her court and advance what is in N.P.'s best interest—setting a child-specific contract at a specific rate determined by her.[3]

---

[3] The respondent directs this court to *In the Interest of R.W.K.* for the proposition that she had the requisite power to order the Department to procure a child-specific contract for N.P. In *R.W.K.*, the trial court determined the Department established proper grounds to terminate appellant's parental rights but found termination would not be in the child's best interest. No. 10-16-00393-CV, 2017 WL 1957444, at *1 (Tex. App.—Waco May 10, 2017, no pet.) (mem. op.). Following a final order wherein the Department was named managing conservator of the child, the trial court clarified its order to require the appellant to comply with the Department's service plan. *Id.* at *2. On appeal, the appellant argued the trial court lacked the authority to require her to comply with the requirements of the family service plan. *Id.* The *R.W.K.* court affirmed the trial court's order because, as appellant's parental rights were not terminated, the trial court had the authority to order services in the context of the child's best interest. *Id.* at *2-3. The *R.W.K.* court focused on the actions, and inactions, of the appellant to comply with the Department's service plan. The opinion did not address the issue before this court, which is whether the trial court had the authority to compel the Department to enter into child-specific contracts with certain providers at rates determined by the trial court. Therefore, the *R.W.K.* opinion does not provide guidance for the issue faced by this court in this original proceeding.

## A.      The Law in General—Separation of Powers

"The separation of the powers of government into three distinct, rival branches— legislative, executive, and judicial—is 'the absolutely central guarantee of a just Government.'" *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 569 (Tex. 2013) (citation omitted).  The Texas Constitution mandates:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.  "The separation of powers doctrine means that a 'public officer or body may not exercise or otherwise interfere with a power constitutionally assigned to another public officer or body, nor may either surrender its own constitutionally assigned power, referring in all cases to the 'mass' of its powers or any 'core' paramount power.'"  *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Mata & Bordini, Inc.*, 2 S.W.3d 312, 317 (Tex. App.—San Antonio 1999, pet. denied) (citations omitted).

"The Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers." *In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, no pet.).  "The application of these two tests is not always straightforward, as there is an overlap in the functioning of the three different branches of government." *Martinez v. State*, 503 S.W.3d 728, 733-34 (Tex. App.—El Paso 2016, pet. ref'd).  The determination of whether an action is permitted to be undertaken by the judicial or legislative branch is often difficult "under varying factual circumstances." *Gov't Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 562 (Tex. 1963) (orig. proceeding).  Any

exceptions "to the constitutionally mandated separation of powers are never to be implied in the least; they must be 'expressly permitted' by the Constitution itself." *Norwood*, 418 S.W.3d at 570 (citation omitted).

Although the Constitutional provision on separation of powers "appears on its face to be rigid and absolute . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Tex. Comm'n on Envtl. Quality v. Abbott*, 311 S.W.3d 663, 671 (Tex. App.—Austin 2010, pet. denied) (citation omitted). Thus, Texas courts have never held that the three branches of government operate with absolute independence, and have instead "long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle." *Id.* at 672 (citation omitted). Accordingly, the separation of powers doctrine "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Id.* (citation omitted).

Where one branch of government assumes power more properly attached to another branch or unduly interferes with the powers of another, any resulting order is void. *State v. Ferguson*, 133 Tex. 60, 63, 125 S.W.2d 272, 274 (1939) (orig. proceeding) (noting availability of mandamus relief from a void order where one branch of government usurps the power of another); *D.W.*, 249 S.W.3d at 635.

To determine whether the trial court violated the Separation of Powers Clause in this case, we next consider the powers delegated to the trial court and to the Department.

## B. The Judiciary

The power of the judiciary is "divided among . . . various named courts by means of express grants of 'jurisdiction' contained in the constitution and statutes." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). "In addition to the express grants of judicial power to each

court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute." *Id.*

Here, the trial court derives its constitutional power from Article V, section 8 of the Texas Constitution. *See* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body[.]").

The trial court's statutory power in this case derives from the Texas Family Code. When the trial court entered the final order terminating the parental rights of N.P.'s biological parents and establishing the Department as the permanent managing conservator, the court acquired continuing jurisdiction over N.P. and retained the power to make future modifications to its order. *See* TEX. FAM. CODE §§ 155.001-.003. The February 4th order was issued under the authority of Family Code chapter 263, which defines the parameters whereby the judicial branch may review the permanency placement status of a child in the managing conservatorship of the Department following a final order. Specifically, if the Department has been named managing conservator of the child in a final order that terminates the parental rights, as is the case here with N.P., the court must conduct a permanency hearing within ninety days following the entry of the parental termination order. *Id.* § 263.501(b). The court must continue to hold additional permanency hearings thereafter every six months until the child is no longer in the managing conservatorship of the Department. *Id.* During each additional hearing, to the extent such hearings are needed, the court "shall review the permanency progress report[.]" *Id.* § 263.5031(a)(4). Thus, the trial court here had the statutory duty and power to review the Department's plans for N.P.

As stated above, a court also may exercise powers "not expressly authorized or described by constitution or statute." *Eichelberger*, 582 S.W.2d at 398. "These powers are woven into the

fabric of the constitution by virtue of their origin in the common law and the mandate of Tex. Const. Art. II, Sec. 1, of the separation of powers between three co-equal branches." *Id.*; *see also Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017) ("Our precedent also recognizes the judicial branch's inherent or implied authority, authority derived not from statute but born of the constitutionally mandated separation of powers and 'woven into the fabric of the constitution by virtue of their origin in the common law.'"). "They are categorized as 'implied' and 'inherent' powers, though some courts have also used the terms incidental, correlative and inferred." *Eichelberger*, 582 S.W.2d at 398. "The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." *Id.* "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* Inherent power "springs from the doctrine of separation of powers between the three governmental branches." *Id.* at 399. "This power exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity." *Id.* Trial courts have the inherent authority "to ensure the proper administration of justice." *Henry*, 520 S.W.3d at 36. "The implied powers of a court do not stand on such an independent basis as those described as inherent." *Eichelberger*, 582 S.W.2d at 399. "Though not directly or expressly granted by constitutional or legislative enactment, implied powers are those which can and ought to be implied from an express grant of power." *Id.*

The overall scheme of the Family Code and overriding public policy dictates that the best interest of the child is always paramount. Thus, we conclude that, in addition to its statutory powers, the trial court had the inherent power to act in N.P.'s best interest.

**C.      The Executive Branch - The Texas Department of Family and Protective Services**

The power to make the law of the people is vested in the legislative branch through Article 3, section 1 of the Texas Constitution. *Diaz v. State*, 68 S.W.3d 680, 685 (Tex. App.—El Paso 2000, pet. denied); *see also* TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"). "The power of the legislature includes the power to make, alter, and repeal laws" as well as powers "not expressly or impliedly forbidden by other provisions of the state Constitution." *Diaz*, 68 S.W.3d at 685.

The legislative branch is empowered to create agencies and "may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes 'reasonable standards to guide the entity to which the powers are delegated.'" *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997) (citations omitted); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("Defining what legislative power is or when it has been delegated is no easy task."). The Legislature is not required "to include every detail and anticipate unforeseen circumstances [as such obligation] would . . . defeat the purpose of delegating legislative authority." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995).

In this case, the Department is a state agency, administered by the Health and Human Services Commission, that is legislatively designated to, *inter alia*, provide support and services to children through state and federal funding. *See* TEX. HUM. RES. CODE § 40.002; *Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, 651 n.5 (Tex. App.—El Paso 2016, pet. denied) ("The Health and Human Services Commission oversees the Texas Health and Human Services system, which is composed of five state agencies, including [the Department]."); *Tex. Health & Human Servs. Comm'n v. Wolfe*, No. 03-08-00413-CV, 2010 WL 2789777, at *1 (Tex.

App.—Austin July 14, 2010, pet. denied) (mem. op.) ("The Texas legislature reorganized several state social services agencies in 2003 and 2004. It created an umbrella agency, the Health and Human Services Commission[,] and divided it into four departments: the Department of Assistive and Rehabilitative Services[,] the Department of State Health Services, the Department of Aging and Disability Services, and the Department of Family and Protective Services."). As a state agency, the Department's "powers are limited to (1) powers expressly conferred by the Legislature, and (2) implied powers that are reasonably necessary to carry out the express responsibilities given to [the Department] by the Legislature." *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex*., 253 S.W.3d 184, 192-93 (Tex. 2007).

As part of its legislatively conferred authority, the Department has the power to negotiate and execute contracts necessary "to perform any of the [D]epartment's powers or duties." TEX. HUM. RES. CODE § 40.058(a). In cases involving children under its care, the Department performs its duties by using child-placing agencies to act as a quasi-broker between children in the Department's conservatorship and foster homes.[4] When procuring a contract with a child-placing agency, the contract must include provisions that:

> (1) enable the [D]epartment and commission to monitor the effectiveness of the services;
> (2) specify performance outcomes, financial penalties for failing to meet any specified performance outcomes, and financial incentives for exceeding any specified performance outcomes;
> (3) authorize the [D]epartment or commission to terminate the contract or impose monetary sanctions for a violation of a provision of the contract that specifies performance criteria or for underperformance in meeting any specified performance outcomes;
> (4) authorize the [D]epartment or commission, an agent of the department or commission, and the state auditor to inspect all books, records, and files maintained by a contractor relating to the contract; and

---

[4] A child-placing agency is defined as "[a] person, including a sole proprietor, partnership, or business or governmental entity, other than the parents of a child, who plans for the placement of or places a child in a childcare operation or adoptive home." 26 TEX. ADMIN. CODE § 745.21(9).

(5) are necessary, as determined by the [D]epartment or commission, to ensure accountability for the delivery of services and for the expenditure of public funds.

*Id.* § 40.058(f).

Thus, the Legislature granted the Department the authority and responsibility to enter into child-specific contracts in compliance with governing statutes. *See Lewellen*, 952 S.W.2d at 467 (citations omitted) (legislative branch "may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes 'reasonable standards to guide the entity to which the powers are delegated.'").

## CONTRACTS WITH SPECIFIC CHILD-PLACING AGENCIES

Against this background, we consider whether the trial court had the power to order the Department to enter into child-specific contracts with specific child-placing agencies.

As explained above, Family Code section 263.5031(4) requires a trial court to "review" the permanency progress report prepared by the Department. The term "review" is not defined in Chapter 263. Therefore, we look to the ordinary and plain meaning of the term, with a preference to harmonize and find consistency with the statutory scheme as a whole. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). To "review" means to consider, inspect, or reexamine a subject or thing. *Review*, BLACK'S LAW DICTIONARY (11th ed. 2019). The inclusion of "review" within the text of section 263.5031(4) allows the court to inspect, consider, or reexamine the Department's permanency progress report. However, absent from section 263.5031(4) is an avenue whereby a court may impose specific contractual obligations on the Department following the court's review of the permanency progress report. Instead, as we have recognized, the Legislature delegated the power to negotiate and execute child-specific contracts to the Department.

We recognize the trial court's on-going statutory and inherent responsibility to act in N.P.'s best interest. Beyond its statutory duty, it is apparent from the record the trial court was determined to find a placement for N.P. We further acknowledge "[t]he duty of the trial court is to review activities that affect the child, and that duty is not restricted by the choices of . . . the Department." *In re C.G.B.*, 163 S.W.3d 805, 808 n.5 (Tex. App.—Texarkana 2005, no pet.). However, the authority to act in a child's best interest is not boundless.[5] While the trial court has continuing jurisdiction over the case and the parties and has the statutory authority to review the actions taken by the Department on behalf of a child under its care, the court "may not usurp legislative authority by substituting its policy judgment for that of the [Department] acting as a legislative body." *Henry*, 520 S.W.3d at 37.

Under these circumstances, we hold the Legislature vested sole authority in the Department to negotiate and execute child-specific contracts. Therefore, we conclude the trial court unduly interfered with the powers of the legislative branch when it ordered the Department to submit these written offers to specific child-placing agencies.

SPECIFIC DAILY RATES FOR N.P.

Finally, we consider whether the trial court had the power to order the Department to enter into child-specific contracts with specific daily rates. There is no dispute the Department is required to pay the cost of foster care for N.P. *See* TEX. FAM. CODE § 264.101. "The [D]epartment may accept and spend funds available from any source to pay for foster care, including medical care, for a child in the [D]epartment's care." *Id.* § 264.101(e). The Department "shall establish a

---

[5] *Cf. Henry*, 520 S.W.3d at 37 ("As we read the Constitution and the Government Code, the judiciary's role is not to dictate the salaries of county judicial administrators, other than within the range as the statute allows. Article V of the former gives commissioners courts 'power[ ] and jurisdiction over all county business,' and section 75.401(d) of the latter gives them exclusive authority to set a court administrator's salary range. Here, the Commissioners Court did set a salary range. The local district judges may reasonably think it unreasonable, but separation of powers forbids them from mandating specific compensation outside the designated range.").

method of allocating state funds for children's protective services programs that encourages and rewards the contribution of funds or services from all persons, including local governmental entities." *Id.* § 264.004(a). To do so, the Department enters into contracts with residential childcare providers at specified rates. *See* 40 TEX. ADMIN. CODE § 700.328.

With an exception that does not apply here, "all providers of 24-hour residential child care, including foster family homes verified by [the Department], general residential operations, residential treatment centers, independent foster family homes, independent foster group homes, Supervised Independent Living (SIL) providers, child-placing agencies, and any other entity that meets the definition of 'child-care institution' under 42 U.S.C. § 672 *must complete a contract or agreement with [the Department] in order to receive foster care maintenance payments*." *Id.* § 700.328(a) (emphasis added). The Department's "foster care rates are approved by the Health and Human Services Commission in accordance with [40 TEX. ADMIN. CODE § 700.1753.]" *Id.* § 700.328(b). "Except as otherwise provided in those rules, the foster care payment rate is tied to the child's service level." *Id.* Administrative Code section 700.1753 provides the rate-setting methodology for foster care contracts—including contracts that are child-specific. *See* 40 TEX. ADMIN. CODE § 700.1753.[6]

Under these circumstances, we hold the Legislature has vested in the Department the authority to enter into child-specific contracts at legislatively determined rates. Therefore, we conclude the trial court unduly interfered with the powers of the legislative branch when it ordered

---

[6] "For payment rates established September 1, 2005 and thereafter, the [Department] approves rates that are statewide and uniform. The Health and Human Services Commission (HHSC) calculates the rates for [the Department] and takes into consideration staff recommendations based on the application of formulas and procedures described in this chapter when calculating the rates. However, [the Department] may adjust staff recommendations when [the Department] deems such adjustments are warranted by particular circumstances likely to affect achievement of program objectives, including economic conditions and budgetary considerations. Reimbursement amounts will be determined coincident with the state's biennium. Providers of 24-hour residential childcare services will have the opportunity to discuss rate changes in regularly scheduled [Department] public meetings." 40 TEX. ADMIN. CODE § 700.1753(a)(2).

the Department to submit a written offer for a child specific contract in the amount of $2,500 per day.

## CONCLUSION

In this case, the trial court lacked the authority—constitutional, statutory, inherent, or otherwise—to require the Department to (1) "submit a written offer for a child specific contract in the amount of $2,000 per day to Pathways, Bair Foundation Trulight, Cowie Family (Hearts to Home) in Florida, Mosaic, and up to 3 child placing agencies recommended and submitted to the Department by Mrs. Alana Pearsall, the child's attorney and guardian ad litem for the placement of [N.P.] consistent with Judge Garcia's February 10, 2020 order"; (2) "submit the referenced written offer for a child specific contract to the agencies no later than 9:00 a.m. on Tuesday, January 18, 2022"; and (3) "include within the written offer for a child specific contract an additional $500.00 per day subsidy for the first 9 months of placement for an [sic] licensed professional counselor, or someone with a greater level of degree, to provide therapy/counseling services to [N.P.]"[7]  Therefore, we hold the above portions of the February 4th order are void. Accordingly, the Department does not need to show the lack of an adequate appellate remedy to be granted mandamus relief.  *See In re Mask*, 198 S.W.3d 231, 233 (Tex. App.—San Antonio 2006, orig. proceeding) ("When the trial court's order is void, mandamus relief is available regardless of whether there is an adequate remedy by appeal.").

---

[7] *Cf. Henry*, 520 S.W.3d at 38 ("Here, the county's judicial branch encroached on the county's legislative branch, the Commissioners Court, which was performing a constitutionally and statutorily authorized function.  Personnel is policy, as they say, and fiscal-policy decisions, including staffing, are a quintessentially legislative prerogative. Neither the Constitution nor the Government Code allows the judiciary to usurp a county's budgeting discretion by, for example, dictating specific salaries for county employees other than within the designated range, as the Code allows.  County budgets are set by county budgeters.  And while section 75.401(d) authorizes the 'judges served' to determine ultimately what qualifies as 'reasonable compensation,' step one in the process, the salary range, is 'set by the commissioners court.'").

We conditionally grant the petition for writ of mandamus and direct the trial court to, no later than fifteen days from the date of this opinion, vacate those portions of its February 4, 2022 "Permanency Hearing Order After Final Order" ordering the Department to (1) "submit a written offer for a child specific contract in the amount of $2,000 per day to Pathways, Bair Foundation Trulight, Cowie Family (Hearts to Home) in Florida, Mosaic, and up to 3 child placing agencies recommended and submitted to the Department by Mrs. Alana Pearsall, the child's attorney and guardian ad litem for the placement of N.P. consistent with Judge Garcia's February 10, 2020 order"; (2) "submit the referenced written offer for a child specific contract to the agencies no later than 9:00 a.m. on Tuesday, January 18, 2022"; and (3) "include within the written offer for a child specific contract an additional $500.00 per day subsidy for the first 9 months of placement for an licensed professional counselor, or someone with a greater level of degree, to provide therapy/counseling services to [N.P.]"

Lori I. Valenzuela, Justice