

## Fourth Court of Appeals
### San Antonio, Texas

## OPINION

No. 04-22-00340-CV

**IN RE THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

Original Mandamus Proceeding[1]

Opinion by:    Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 14, 2022

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

The child at the center of this case, S.V., is in the permanent managing conservatorship of the Department of Family and Protective Services. On June 7, 2022, the trial court held an emergency hearing and signed an Order Following Emergency Child Without Placement Hearing. On June 9, 2022, the Department filed this mandamus proceeding complaining of some of the terms in that order along with an emergency motion to stay those terms. We granted the motion for emergency relief and invited the respondent and real parties in interest to file responses; neither did. We conditionally grant mandamus relief.

---

[1] This proceeding arises out of Cause No. 2014-PA-02190, styled *In the Interest of S.N.V., a Child*, pending in the 166th Judicial District Court, Bexar County, Texas. The Honorable Mary Lou Alvarez presiding over the orders at issue.

## BACKGROUND

The parental rights of S.V.'s parents have been terminated, and the Department is her permanent managing conservator. While under the supervision of the Department, S.V. ran away from her placement. It appears the Department did not locate her for more than one week. S.V. was returned to the Department's custody on June 6, 2022. The trial court held an emergency hearing the following day.

After the June 7 emergency hearing, the trial court signed an order containing the following terms:

> 2.1    IT IS ORDERED that the child be placed on electronic monitoring through an ankle monitor from 11:00 o'clock a.m. on June 7, 2022, until August 15, 2022, for GPS tracking through Recovery Monitoring Services.
>
> 2.2    IT IS ORDERED that the cost for the ankle monitor of $300/month is assessed against the Texas Department of Family and Protective Services.

At the hearing, the Department objected to the cost of the ankle monitor being assessed against it, but the trial court overruled that objection. The Department, however, did not object to the ankle monitor being placed on S.V. at the hearing.

## ANALYSIS

### Standard of Review

To receive mandamus relief, the Department must show the trial court committed a clear abuse of discretion and it has no adequate remedy by appeal. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). If an order is void, the relator does not have to show a lack of

an adequate appellate remedy for mandamus relief to be appropriate. *See In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding) (per curiam). "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) (internal quotation marks omitted).

*Applicable Law*

The Department argues the June 7 order: (1) violates the Separation of Powers Clause of the Texas Constitution; (2) is barred by sovereign immunity; and (3) is not in the best interest of S.V. We conclude that the June 7 order violated the Separation of Powers Clause because it ordered the Department to enter into a contractual agreement with a specific provider at a specific rate. Because that conclusion is dispositive, we do not reach the Department's remaining arguments. *See* TEX. R. APP. P. 47.1.

*Separation of Powers*

"The separation of the powers of government into three distinct, rival branches—legislative, executive, and judicial—is the absolutely central guarantee of a just Government." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 569 (Tex. 2013) (internal quotation marks omitted). The Texas Constitution mandates:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. Authority bestowed upon one branch of government cannot be exercised by another branch "unless expressly permitted by the constitution." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

"The Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers." *In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, no pet.). "The application of these two tests is not always straightforward, as there is an overlap in the functioning of the three different branches of government." *Martinez v. State*, 503 S.W.3d 728, 733–34 (Tex. App.—El Paso 2016, pet. ref'd).

Although the Separation of Powers Clause "appears on its face to be rigid and absolute . . . such a construction would be impossible to implement in all cases because not every governmental power fits logically and clearly into any particular 'department.'" *Tex. Comm'n on Envtl. Quality v. Abbott*, 311 S.W.3d 663, 671 (Tex. App.—Austin 2010, pet. denied) (internal quotation marks omitted). Thus, Texas courts have never held that the three branches of government operate with absolute independence; instead, courts have "long held that some degree of interdependence and reciprocity is subsumed within the separation of powers principle." *Id.* at 672. Accordingly, the separation of powers doctrine "enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Id*.

Where one branch of government assumes powers more properly attached to another branch or unduly interferes with the powers of another, any resulting order is void. *See State v. Ferguson*, 125 S.W.2d 272, 274 (Tex. 1939) (orig. proceeding) (noting mandamus relief is available where one branch of government usurps the power of another); *see also D.W.*, 249 S.W.3d at 635.

A.      The Judicial Branch

The power of the judiciary is "divided among . . . various named courts by means of express grants of 'jurisdiction' contained in the constitution and statutes." *Eichelberger v. Eichelberger*,

582 S.W.2d 395, 398 (Tex. 1979). "In addition to the express grants of judicial power to each court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute." *Id.*

Here, the trial court derives its constitutional power from Article V, section 8 of the Texas Constitution. *See* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body[.]"). District court judges in Texas are charged with the powers explicitly defined in the constitution and powers inherently derived "'from the very fact that the court has been created[.]'" *See Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996) (orig. proceeding) (quoting *Eichelberger*, 582 S.W.2d at 398).

Because a final order has been rendered in S.V.'s case, the trial court's statutory power here derives from Chapter 263 of the Texas Family Code, which requires trial courts to review the permanency plans of children in the Department's care. *See* TEX. FAM. CODE ANN. § 263.501(b) (requiring the court to conduct permanency hearing within 90 days of termination order and at least every six months thereafter); *see also* TEX. FAM. CODE ANN. § 263.5031(4)(a) (requiring court to review permanency progress report to determine, inter alia, child's safety and well-being); TEX. FAM. CODE ANN. § 263.502(a-1) (requiring Department to include certain information in permanency progress report); TEX. FAM. CODE ANN. §§ 155.001–.003 (establishing the court's continuing, exclusive jurisdiction over the child—including to render and modify orders—after rendition of a final order in Title 5 cases, under which Chapter 263 falls). We conclude the trial court had the statutory duty and power to review the Department's permanency plans for S.V.

As noted above, courts may also exercise powers "not expressly authorized or described by constitution or statute." *Eichelberger*, 582 S.W.2d at 398. "These powers are woven into the

fabric of the constitution by virtue of their origin in the common law and the mandate of [the Texas Constitution's] separation of powers between three co-equal branches." *Id.*; *see also Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017). "The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." *Eichelberger*, 582 S.W.2d at 398. "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* For example, trial courts have the inherent authority "to change, set aside or otherwise control their judgments; to summon and compel the attendance of witnesses; to regulate the admission and practice of law; and to provide personnel to aid the court in the exercise of its judicial function." *In re State*, 162 S.W.3d 672, 677 (Tex. App.—El Paso 2005, orig. proceeding); *see Henry*, 520 S.W.3d at 36. Inherent power "springs from the doctrine of separation of powers . . . . [and] exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity." *Eichelberger*, 582 S.W.2d at 399.

B.     The Texas Department of Family and Protective Services

The power to make the law of the people is vested in the legislative branch through Article 3, section 1 of the Texas Constitution. TEX. CONST. art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"); *see also Diaz v. State*, 68 S.W.3d 680, 685 (Tex. App.—El Paso 2000, pet. denied). "The power of the legislature includes the power to make, alter, and repeal laws, when such power is not expressly or impliedly forbidden by other provisions of the state Constitution." *Diaz*, 68 S.W.3d at 685.

Further, the legislative branch is empowered to create agencies and "may delegate its powers to agencies established to carry out legislative purposes, as long as it establishes reasonable standards to guide the entity to which the powers are delegated." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 467 (Tex. 1997) (internal quotations omitted); *see also FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("Defining what legislative power is or when it has been delegated is no easy task."). The legislature is not required "to include every detail and anticipate unforeseen circumstances [as such obligation] would . . . defeat the purpose of delegating legislative authority." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995).

In this case, the Department is a state agency, administered by the Health and Human Services Commission, that is legislatively designated to, inter alia, provide support and services to children through state and federal funding. *See* TEX. HUM. RES. CODE ANN. § 40.002; *Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, 651 n.5 (Tex. App.—El Paso 2016, pet. denied) ("The Health and Human Services Commission oversees the Texas Health and Human Services system, which is composed of five state agencies, including [the Department]."). As a state agency, the Department's "powers are limited to (1) powers expressly conferred by the Legislature, and (2) implied powers that are reasonably necessary to carry out the express responsibilities given to [the Department] by the Legislature." *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192–93 (Tex. 2007) (internal quotation marks omitted).

*Application*

With this in mind, we consider whether the trial court had the power to order the Department to enter into a child-specific contract with a specific provider at a specific rate. In *In re Texas Department of Family & Protective Services*, No. 04-22-00040-CV, —— S.W.3d ——, 2022 WL 1751377 (Tex. App.—San Antonio June 1, 2022, orig. proceeding), this court considered

whether the trial court had the authority to order the Department to enter into a child-specific contract with one of a few specific providers named in the court's order at a specific daily rate. *Id*. at *7–8. In that case, we held the trial court's order violated the Separation of Powers Clause of the Texas Constitution. *Id*. at *9. We noted the legislature specifically delegated the contractual and rate-setting authority in this realm to the Department. *Id*. at *6-7. Therefore, we concluded the trial court's order was void and mandamus relief was appropriate.[2] *Id*. at *9. The same principles guide our decision here.

*Restraint on S.V.'s Liberty*

In its mandamus petition, the Department argues the trial court abused its discretion and "deprived S.V. of her liberty" by requiring her to wear an ankle monitor. But it did not raise this argument below. *See* TEX. R. APP. P. 33.1(a)(1). The trial court could not have abused its discretion by declining to follow an argument that was never presented to it. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding) (per curiam).

*Obligation to Enter into a Child-Specific Contract with a Specific Provider*

As explained above, Texas Family Code section 263.5031(4) requires a trial court to review the permanency progress report prepared by the Department. But Chapter 263 does not define the term "review." Therefore, we look to the ordinary and plain meaning of the term and attempt to harmonize the statutory scheme as a whole. *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51,

---

[2] *See In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00085-CV, 2022 WL 2820937, at *2 (Tex. App.—San Antonio July 20, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00087-CV, 2022 WL 3219596, at *3 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00091-CV, 2022 WL 2230720, at *1-2 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00092-CV, 2022 WL 2230719, at *2 (Tex. App.—San Antonio June 22, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00094-CV, 2022 WL 3219924, at *2 (Tex. App.—San Antonio Aug. 10, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00165-CV, 2022 WL 2135534, at *2 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00166-CV, 2022 WL 3372425, at *3-4 (Tex. App.—San Antonio June 15, 2022, orig. proceeding) (mem. op.); *In re Tex. Dep't of Family & Protective Servs.*, No. 04-22-00175-CV, 2022 WL 3046944, at *2 (Tex. App.—San Antonio Aug. 3, 2022, orig. proceeding) (mem. op.).

58 (Tex. 2015). To "review" means to consider, inspect, or reexamine a subject or thing. *Review*, BLACK'S LAW DICTIONARY (11th ed. 2019). The inclusion of "review" within the text of section 263.5031(4) allows the court to inspect, consider, or reexamine the Department's permanency progress report. However, absent from section 263.5031(4) is any authority under which a court may, following its review of the permanency progress report, impose specific contractual obligations on the Department. Instead, the legislature delegated to the Department the power to negotiate and execute contracts in furtherance of its powers and duties. *See* TEX. HUM. RES. CODE ANN. § 40.058(a), (b).

We recognize the trial court's ongoing statutory and inherent authority to act in S.V.'s best interest. We further acknowledge "[t]he duty of the trial court is to review activities that affect the child, and that duty is not restricted by the choices of . . . the Department." *In re C.G.B.*, 163 S.W.3d 805, 808 n.5 (Tex. App.—Texarkana 2005, no pet.). However, the Separation of Powers Clause places definite limits on a trial court's authority to act in a child's best interest. *See Henry*, 520 S.W.3d at 37 (noting judiciary's supervision, in analogous context, "is not boundless."). While the trial court has continuing jurisdiction over the case and the parties—and has the statutory authority to review the actions taken by the Department on behalf of a child under its care—it "may not usurp legislative authority by substituting its policy judgment for that of the [Department] acting as a legislative body." *Id*. The trial court may not unduly interfere with the duties and powers the legislature gave the Department. For the reasons described in *In re Texas Department of Family & Protective Services*, we hold that when the trial court ordered the Department to procure a contract with Recovery Monitoring Services, it unduly interfered with a legislatively conferred power of the Department. 2022 WL 1751377, at *7–8. Those portions of the trial court's order are, therefore, void. *See Cook*, 733 S.W.2d at 140.

*Obligation to Enter into a Contract at a Specific Rate*

Having concluded that the trial court abused its discretion in ordering the Department to enter into a child-specific contract with a specific provider, our final inquiry is whether the trial court had the power to order the Department to pay a specific rate for the GPS services associated with S.V.'s ankle monitor.

The Department, through rules and procedures adopted by the Health and Human Services Commission, is legislatively "delegated the authority to procure its goods and services . . . ." TEX. GOV'T CODE ANN. § 2155.144(b). The legislature requires that the Department "shall acquire goods or services by any procurement method approved by the Health and Human Services Commission that provides the best value to the agency." *Id.* § 2155.144(c). The legislature specifically requires the Department to consider certain factors before acquiring goods or services, and further requires the agency to document that it considered those factors. *Id.* § 2155.144(c), (d). Within section 2155, "'goods' means supplies, materials, or equipment" while "service," with exceptions that do not apply here, "means the furnishing of skilled or unskilled labor or professional work." *Id.* § 2155.001(1), (2).

We conclude that an ankle monitor is "equipment" that meets the statutory definition of a good. *See generally Ankle Bracelet*, BLACK'S LAW DICTIONARY (11th ed. 2019). We further conclude that determining an ankle monitor's location is "professional work" that meets the statutory definition of a "service." The Department was therefore required to comply with statutory requirements—including to provide the "best value to the agency"—for S.V.'s ankle monitor and associated monitoring services.

We recognize that a trial court may assess the safety and well-being of the child and whether the child's needs are being adequately addressed. *See* TEX. FAM. CODE ANN. § 263.5031(4). But the legislature gave the Department the authority to determine which goods

and services to provide the children in its care and how much to pay for those goods and services. *See* TEX. GOV'T CODE ANN. § 2155.144(c), (d). Again, we conclude the trial court does not have the power to order the Department to provide specific goods and specific services to specific children at specific rates. *See Tex. Dep't of Family & Protective Servs.*, 2022 WL 1751377.

We therefore hold paragraphs 2.1 and 2.2 in the trial court's June 7, 2022 order violate the Separation of Powers Clause in the Texas Constitution and are void. *See id*. Accordingly, the Department does not need to show the lack of an adequate remedy by appeal to be granted mandamus relief. *See id.* at *9 (noting relators are relieved of burden to establish no adequate remedy by appeal when challenged orders are void).

### CONCLUSION

The trial court lacked the authority—constitutional, statutory, inherent, or otherwise—to order the Department to contract with a specific provider at a specific rate for the goods and services at issue here. We conditionally grant the petition for writ of mandamus as to paragraphs 2.1 and 2.2 of the trial court's June 7, 2022 order. We direct the trial court to, no later than fifteen days from the date of this opinion, vacate paragraphs 2.1 and 2.2 in its June 7, 2022 order. We are confident the trial court will promptly comply; our writ will issue only if it does not.

Beth Watkins, Justice